## Peterman's Estate

Edward C. Lukens and Edgar S. McKaig, of Adams, Childs, McKaig & Lukens, for Charles Jacob Peterman Elliott, administrator c. t. a., and for Edward Rose, Jr., individually and as guardian for Mildred D. Arnold, a weak-minded person.

Edward S. Lower, special counsel, for the Commonwealth of Pennsylvania.

Irving N. Kieff, for the Commonwealth of Pennsylvania, claiming transfer inheritance tax.

VAN DUSEN, P. J., March 12, 1946.—This is an appeal from the assessment of inheritance tax by the register upon three saving fund accounts which were opened by decedent as follows:

Account no. J-17443 with the Western Saving Fund Society in the name of "Bella Peterman in trust for Dr. Edward Rose".

Account no. 153410 with the Beneficial Saving Fund in the name of "Bella Peterman in trust for niece Mildred D. Arnold".

Account no. E144,363 with the Philadelphia Saving Fund Society, in the name of "Bella Peterman in trust for Mildred D. Arnold".

Dr. Edward Rose was called as a witness and testified, subject to objection as to his competency. I suppose the objection is intended to apply only with respect to his own trust. Our court has held in Loeffler's Estate, 2 D. & C. 388, and Monihan's Estate, 26 D. & C. 401, that he is not competent. Other courts have reached the contrary conclusion: Esbenshade's Estate, 6 D. & C. 520; Watson's Estate, 23 D. & C. 669; Symser's Estate, 53 D. & C. 387.

The question of competency is difficult. If the reason for the "dead man's rule" is considered, our court is right. If regard is had to the words of the statute and not to the reason, the other courts are right. I have resolved the doubt in favor of receiving his testimony because I do not think the facts to which he testified are material.

From the testimony of Dr. Rose, I find as a fact that decedent, Bella Peterman, informed Dr. Rose and also Mildred D. Arnold of the existence of these accounts. Dr. Rose did not attempt to testify as to what was in the mind of Mildred Arnold, but to what was said and done in her presence which would result in her having an informed state of mind.

I also find from other testimony that the pass books for these three accounts were found after the death of Bella Peterman in a safe deposit box which was in the joint names of herself and Mildred D. Arnold. Incidentally, the latter was her niece and lived with her, and later became of unsound mind, and Dr. Rose is her guardian.

We decided in Flannery's Estate, 34 D. & C. 165, that a tentative trust was taxable at the death of the donor. The same conclusion was reached in Kress' Estate, 92 Pitts. L. J. 553. To the contrary is In re Mines, 31 D. & C. 153. Nevertheless, I am asked to re-examine the question.

It is argued that title passes to the beneficiary at the time the trust is created, and that therefore nothing passes at the death of the donor. It is said that the lapsing of the right of revocation at the death of the donor is not the passage of title. This argument over-looks the fact that possession and enjoyment by the beneficiary does not begin until the death of the donor, and that liability to tax follows from that fact.

Reference was made to Dolan's Estate, 279 Pa. 582. That was a case of property conveyed to a trustee for the benefit of certain persons for life with remainder over, and a right of revocation was retained. It was held that no tax accrued at the time the donor died without having exercised the right of revocation. Title and possession and enjoyment were all parted with in that case. In the case of a tentative trust it may be that title is parted with (though I doubt it), but cer-tainly possession and enjoyment are not. Liability to tax arises when possession and enjoyment are realized at the death of the donor.

And Dolan's Estate has been overruled (though not by name) by Commonwealth v. Linderman's Es-tate, 340 Pa. 289, and the cases therein cited. Chief Justice Schaffer there said, p. 290:

"The act applies only to transfers occurring after its passage and not to those prior thereto, provided the settlor has divested himself of all title to the corpus: Oliver's Est., 273 Pa. 400, 117 A. 81; Houston's Est., 276 Pa. 330, 120 A. 267; Denniston's Est., 325 Pa. 453, 191 A. 39. The absolving principle is that the settlor has divested himself absolutely of all title to the property, not at his death, but at the time of execution of the instrument creating the trust. There must not remain in the settlor the opportunity to change its provisions so that he may reassert dominion: . . ."

While the liability to tax the ordinary tentative trust is denied in this case, an element is introduced which was not present in the Flannery and Kress cases. I have found as a fact that the donor gave notice to the beneficiaries of the existence of these bank accounts. It is said that this fact makes the trust irrevocable by the trustee, and that if the trust is irrevocable, title does pass to the beneficiary at the time the gift is made.

Even if the trust should become irrevocable (a conclusion with which I do not at all agree) the beneficiary still does not get possession and enjoyment until the donor dies; and the tax liability therefore arises when such possession and enjoyment is obtained at the donor's death.

The only authority referred to for the proposition that notice to the beneficiary makes a tentative trust irrevocable is a sentence in the opinion in Scanlon's Estate, 313 Pa. 424, which is a quotation from In re Totten, 179 N. Y. 112 (in which State the law of tentative trusts originated) as follows:

" 'It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration such as delivery of the pass book or notice to the beneficiary.' "

A. L. I. Restatement of Trusts, sec. 330 (d) says:

"Thus, if a person deposits money in a savings bank in his own name as trustee for another, there is an inference that he intended to reserve a power to revoke the trust at any time. The inference is rebutted if there are other circumstances evidencing an intention to create an irrevocable trust, such as the delivery of the bank book to the beneficiary."

It is significant that this statement omits the element of notice.

Neither Scanlon's case nor Totten's case contained the element of notice to the beneficiary, and I have not been referred to any case in which it was present.

It is easy to say that a tentative trust has become irrevocable, but I do not think the result has been fully thought out. It means that the trust is no longer tentative and that the so-called trustee may not withdraw the fund, or if he does, that he is stealing back his gift. If the bank does not know that the gift has become irrevocable, it would easily be possible to do this.

If the trust should become irrevocable, then it is a dry trust, and title has passed to the beneficiary, and upon proof of the facts, he should be able to withdraw the deposit. I do not believe any one has ever thought of trying that.

And if the trust becomes irrevocable, so that the trustee has no right to withdraw the money, and the beneficiary has no right to withdraw it either, then the fund must lie in bank until the donor dies. Such a piece of untouchable and unalienable property is inconsistent with our general ideas of the nature of property.

And finally, if the beneficiary is not entitled to immediate possession, then he does not come into possession and enjoyment until the donor dies and liability to tax follows.

I do not think that placing the pass book in a safe deposit box to which Mildred Arnold had access is a

delivery to Mildred Arnold, therefore I need not consider whether such a delivery would make the trust irrevocable. There was no delivery to Dr. Rose.

The appeal from the register is dismissed, and the record is remitted to the register of wills.