## In Re Derr, etc

*Thomas R. MacFarland, Jr.*, for petitioner.

ALESSANDRONI, J., October 16, 1952.—The guardian, David H. Kinley, Jr., in the above matter has filed a petition in which he avers that his ward, Charles Derr, is presently residing in a private nursing home; that the estate in the guardian's hands consists of $991 in cash; an assured future monthly income of $95.25 from the Police Pension Fund Association, and a possible $20 per month Social Security benefit; that the cost of maintenance of the ward at the home is $90 per month; that there is an outstanding hospital bill of approximately $1,179.75, of which $200 has been paid by leave of court and, in addition, other unpaid claims and expenses of approximately $200. It is apparent that the assets currently available will not discharge all of the claims now outstanding.

The petition avers that the guardian has discovered a bank account entitled "Charles Derr, Trustee for Helen N. Kirk" in the North Philadelphia Federal Savings and Loan Association. This account was opened by the ward in 1949; it now has a balance of $1,044.11; the pass book has always been in possession of the ward. The guardian has petitioned for leave to use so much of the balance of this savings account trust as may be necessary for the maintenance and support of his ward and for the payment of claims and expenses, accrued and to accrue, insofar as inventoried assets are inadequate to defray same. The beneficiary of the account is an adult daughter who is married and lives with her husband.

A bank deposit of this type has been denominated a tentative trust. This trust is completely revocable at the whim of the depositor. In Scanlon's Estate, 313

Pa. 424, a bank account in trust, identical with the one present here, was held to be a tentative trust but, at death, was revoked by a will which manifested an intent disposing of the fund in a manner other than the title of the account indicated. The disposition of a trust account depends entirely on the intent of the depositor-trustee.

If Charles Derr were not an incompetent no one could deny his absolute right, absent evidence of a contrary intent, to do with the money in the account whatsoever his fancy dictated. The question then presented is, does the fact that Charles Derr has been declared an incompetent destroy his power to deal with the fund as his own absolutely. If it does, then such account is no longer a tentative trust; if it does not, then in whom does the power reside, since power to deal with the fund must exist in someone capable of exercising it. If there were no such power in existence, the account would be, in effect, converted into an irrevocable trust subject to revocation only in the event that the incompetent regained his faculties. Charles Derr, by definition, is incapable of revoking the trust: Section 511 of the Incompetents' Estates Act of June 28, 1951, P. L. 612, 50 PS §1861.

Title to the property of an incompetent remains in the incompetent: 50 PS §1633. This title, however, is subject to all the powers of the guardian: Id. The guardian has the right to and shall take possession of all the real and personal property of his ward: 50 PS §1781. The guardian under the act has wide powers enumerated, and in addition the act is not to be construed to limit the inherent powers and duties of a guardian: 50 PS §1800.

Is there any valid reason for denying the power of the guardian to deal with the account as the ward himself would if he were competent and cognizant of all the facts? Since it is a tentative trust, the ward could

revoke it at will entirely or pro tanto by partial withdrawals. Should not a guardian be able to do the same thing when it is necessary to prevent the ward from becoming a public charge? No one could question the conclusion if the trustee of such an account were competent and in need, and withdrew so much of the money as was necessary for his support and maintenance or, indeed, if he withdrew all of it. Here again, the intent is controlling.

The exact question which has been framed has never been considered. There is dicta in two cases that state that a guardian of an incompetent has the power to use funds in a savings trust account for the support of the incompetent: In re Mines, 31 D. & C. 153; Young v. Dollar Savings Bank, 25 D. & C. 80. See also Pa. Annotations to A. L. I. Restatement of the Law of Trusts, sec. 58. This court in In re Newkirk, 27 D. & C. 675, speaking through Lamberton, J., held that the guardian had no power to deal with the fund in a savings account trust.

However, the facts of the cases cited above are distinguishable from the instant case. In Young v. Dollar Savings Bank and in In re Newkirk, supra, there were sufficient assets on hand to provide for the support and maintenance of the ward without the necessity of using the savings trust account. The inference drawn from these facts is that had the ward been competent he, too, would not have disturbed the accounts.

In In re Mines, supra, the named beneficiaries consented to the use of the fund. That case also had some evidence of an executed trust. There the court further indicated that on equitable principles it would have granted leave to use the fund if necessary to prevent the ward from becoming a public charge.

The leading textwriter on trusts has declared that the weight of authority supports the proposition that a savings account trust may be reached by creditors

of the depositor-trustee: Scott, "The Effects of a Power to Revoke a Trust", 57 Harvard Law Review 362. This has indirect support by a decision that creditors of the beneficiary may not reach the fund: Kelly et al. v. General Finance Company, 16 D. & C. 435. If this be true, then it logically follows that the creditors of the incompetent could reach the fund as it now stands. Therefore, if a court could grant a judgment against an incompetent estate, could it not grant leave to pay bona fide bills by using a fund which the creditors could reach. That is to say, that such fund is and remains part of the estate until the death of the depositor-ward.

The controlling element must be the intent of the ward when the account was opened and maintained. There may not be, and in fact probably never is an express statement of intent. However, does not such an account indicate an intent that certain money that is not presently required for support and maintenance will be put aside for the future benefit of another. But, by retention of absolute control the depositor manifests an intent to use it for any purpose he deems desirable if the need should arise. If the eventuality never arises, then the trust ripens into an absolute gift; if it does arise, then there is a revocation in whole or in part.

An account such as this is a creature of the depositor. His need or lack thereof is of paramount importance in determining what his intention would be, if he were competent, with regard to revoking same, either altogether or pro tanto. The guardian is charged with the duty of expending all income, in the exercise of a reasonable discretion, for the care and maintenance of his ward. The court may authorize the expenditure of any or all of the income or principal of the estate for the care and maintenance of the incompetent: 50 PS §1963. There can be no question that as long as he is

alive, the account is part of the estate of the depositor-ward.

The denial of the power of the guardian to deal with this fund, with leave of court, would destroy the power of anyone to deal with the fund. When the ward will become a public charge as the direct consequence of such denial, then equitable principles demand that the court exercise its power in the interest of protecting the incompetent. In the final analysis, under statute the court's undoubted duty is to exercise its protective power over the person and estate of the incompetent. Can a court refuse to act when it is clear that the best interest of the ward demands it? This is especially true when the refusal to grant leave would mean that a once independent individual, helpless through no fault of his own, is reduced to the level of a public charge.

Therefore, the overriding consideration must be the need of the settlor. As long as his interest does not require use of the fund such an account will remain undisturbed. When dire need arises then the rights of the depositor-ward become paramount. To safeguard such rights the court will order such expenditures as are necessary for the care and maintenance of the incompetent. Such an order may be entered without regard to the consent or the lack thereof on behalf of the beneficiary of the account, because the rights of such beneficiary are at best inchoate.

### Order

And now, to wit, October 16, 1952, leave is granted the guardian, David H. Kinley, Jr., to use only so much of the account in the North Philadelphia Federal Savings and Loan Associations as is necessary for the support and maintenance of the ward, and to discharge by payment the claims against the estate of Charles Derr.