Gritz *v.* Gritz et al., Appellants.

Argued May 12, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Charles J. Biddle,* with him *Albert M. Hoyt, Jr.,* for appellant No. 201.

*Bernard G. Segal,* with him *Louis F. Floge* and *Wm. A. Schnader,* of *Schnader & Lewis,* for appellant No. 243.

*Maurice A. Granatoor,* with him *Edward Cohen,* for appellee.

OPINION BY MR. CHIEF JUSTICE SCHAFFER, June 30, 1941:

The object of this bill in equity is to impress a trust in plaintiff's favor, upon a fund of $5,000, received by defendant, Rose Gritz, being the proceeds of a life insurance policy on the life of her son, Harry Gritz, who was the husband of plaintiff, Bella Gritz. The Philadelphia Saving Fund Society was brought in as a party defendant on the allegation that it was the depository of the fund. On final hearing, the chancellor entered a decree in plaintiff's favor and directed defendants to pay to plaintiff the sum named, with interest and costs. Defendants appeal from the decree.

When first heard, the chancellor found in defendants' favor and dismissed the bill. After a second hearing, following an appeal to us, he found for plaintiff.

The law governing the controversy was settled on the previous appeal (*Gritz v. Gritz,* 336 Pa. 161, 7 A. 2d 1) where we decided, reversing the court below, that plaintiff was a competent witness to establish the trust, and where we said, speaking through Mr. Justice DREW (p. 164): "A trust as to personal property may be established by parol: *Smith's Est.,* 144 Pa. 428; and a beneficiary, named in a policy of insurance, may become a trustee of the proceeds, either by express agreement, or by force of the attendant circumstances, whether or not he be designated as such in the policy: *Fidelity T. & Tr. Co. v. Graham,* 262 Pa. 273. To establish a trust by parol, the plaintiff must furnish proof which is clear, precise and indubitable: *Washington's Est.,* 220 Pa. 204; *Donithen v. I. O. of F.,* 209 Pa. 170."

Plaintiff and the deceased were married December 11, 1937. He died from pneumonia on February 14, 1938. Two policies of life insurance were issued on his life in the sum of $5,000 each, and defendant, Rose Gritz, his mother, was named as beneficiary. At the time the policies were issued, the deceased was unmar-

ried.  Approximately three years afterward he married Bella Gritz, the plaintiff.  The beneficiary named in the policies was  never changed.  The deceased died intestate in the Jefferson Hospital in Philadelphia.

The widow filed this bill in equity alleging that the mother agreed with the insured to pay $5,000 out of the proceeds of the policies to her in the event of his death.  In support of her claim, she called several witnesses, among them, her sister, who testified that, on frequent occasions, the deceased had stated he carried the policies for the benefit of his mother and his wife. The sister testified, in addition, that she was present in the room at the Jefferson Hospital, when the deceased was confined there during his last illness, and while present overheard a conversation between deceased, his mother and his wife, in which he told his mother that he had intended to change the beneficiary in one of the policies, and that he would still do so, unless she would agree to give his wife $5,000; that his mother promised she would.  At the hearing following the filing of our opinion, the widow testified that she had been engaged to marry decedent at the time the policies issued, that she talked with decedent concerning insurance, that he advised her that he was taking out the policies for the benefit of her and his mother, that he was naming his mother as beneficiary in both policies because he had been informed by the insurance agent that he could not name her as they were not as yet married.  She further testified that, on several occasions, the deceased told his mother he intended one of the policies for the benefit of plaintiff. She also said that she was at the hospital when the conversation testified to by her sister took place, at which time his mother agreed that she would turn over the proceeds of one of the policies to her.

Much of the testimony of the widow and that of her witnesses was contradicted by the mother and witnesses called on her behalf.  Nevertheless the chancellor found

the facts as testified to by the widow, choosing to believe her testimony in preference to that of the mother and her witnesses.

In the opinion dismissing the exceptions of Rose Gritz, it is said: "The evidence of plaintiff's witnesses had not convinced the chancellor that Harry Gritz, during his lifetime, had ever declared an intention to create a trust in favor of his wife, in the proceeds of one of the policies. However, this testimony, supplemented by the plaintiff's testimony, changed the chancellor's entire conception of the evidence and, in the opinion of the chancellor, carried the burden cast upon her to establish a trust in her favor." The testimony of the widow and her witnesses, if believed, as it was by the chancellor, warranted the imposition of a trust upon the proceeds of one of the policies.

There is nothing in the record to indicate as argued by appellants that the chancellor, in reaching his final conclusions, failed to consider the testimony of the mother and her witnesses offered at the prior hearing. This contention is based upon certain statements found in the final adjudication. When consideration is given, however, to the petition for rehearing filed on behalf of the mother and the opinion of the court in banc written by the chancellor dismissing exceptions to the adjudication, it is apparent that the chancellor fully considered all the evidence offered.

The portion of the decree of the court below entering judgment for plaintiff against defendant, Rose Gritz, in the sum of $5,000 is affirmed at defendants' cost.

A final decree was entered, not only against Rose Gritz, but also against the Philadelphia Saving Fund Society, which was directed to pay the sum of $5,000, together with interest and costs, to plaintiff. It was provided that plaintiff could proceed against either or both defendants for collection of her judgment but could have only one satisfaction.

So far as the decree against the Philadelphia Saving Fund Society is concerned, it was manifestly erroneously entered. It had been shown by the Society's records that none of the proceeds of the insurance had been deposited with it. However, during the conduct of the trial, counsel for Rose Gritz agreed that $5,000 of the fund on deposit in Rose Gritz's name in the Society could be impressed with a trust in the event that the chancellor found that any existed. Counsel for the Society was not present in court at the time this agreement was made nor was he or the Society ever notified of it. On the first appeal, no bond was filed or supersedeas allowed by the court below. A petition was presented to this court requesting a supersedeas, upon which a rule to show cause issued. After answer filed, a supersedeas was refused. While the appeal was pending, Rose Gritz made demand upon the Society for the payment of the funds in her account, which demand the Society honored.

This portion of the decree of the court below must be reversed. The first appeal in the case did not operate as a supersedeas: Act of May 19, 1897, P. L. 67, as amended, 12 PS Sec. 1133 et seq. In fact a supersedeas was expressly denied when the court refused appellant's petition requesting it. Under such circumstances, the Society properly honored Rose Gritz's demand for the return of her funds and cannot now be required to pay again: *Koenig v. Curran's Rest. & Baking Co.*, 121 Pa. Superior Ct. 201, 183 A. 451.

That part of the decree applying to the Philadelphia Saving Fund Society is reversed and the bill dismissed as to it, costs to be paid by plaintiff.

Mr. Justice STERN dissents on the ground that the evidence is not clear, precise and indubitable.