Opinion by
 

 Kenworthey, J.,
 

 John B. Gorgas died March 14, 1927. The proceeds of a life insurance policy on his life were, on April 1,1927, paid to his mother, Mary A. Gorgas, the named beneficiary. Nellie Gorgas, daughter of John, seeks to establish a parol trust of the insurance proceeds against the estate of Mary, who died August 20, 1933. The fund was awarded, with interest, to Nellie. The administrator has appealed.
 

 When the policy was issued in 1924, John’s first wife, Nellie’s mother, had died and he was about to remarry. Although she did not purport to have been a witness to the arrangement, his second wife testified that “there was an oral understanding between his mother and himself” that “this policy was to be used in the care of his child whenever it would be needed for her support and education,” and that “he wanted the money left for
 
 *321
 
 the support of his child if he was to be taken before me.” She also testified that, shortly after John’s death, Mary said to her, “I am an old woman. I don’t have long to live and I want this child, Nellie Frances Gorgas, for a real heir and educate her and I will have this money in the Bank for her when needed, The insurance money.”
 

 The same day she received them Mary deposited the insurance proceeds in the First National Bank .of Ashley in a savings account marked “Mary A. Gorgas, Trustee. This fund to revert to Mary A. Gorgas when Nellie becomes.of age.”
 
 [1]
 
 Except for a small amount of interest withdrawn in 1928, there were no withdrawals from the account and, at th.e time this controversy commenced, the fund had increased, by accumulations of interest, to $1,337.29. Nellie reached the age of twenty-one in October, 1938. Neither Nellie, nor anyone in her behalf, made any claim to the fund or any part of it until 1940, when appellant filed his account, although Nellie had personal knowledge of its existence as early as 1935, and John’s second wife, Nellie’s stepmother, was aware of its existence shortly after John’s death in 1927.
 

 The effect of what Mary did with the money was to create a tentative trust.
 
 Scanlon’s Estate,
 
 313 Pa. 424, 169 A. 106. Since it was not revoked during her lifetime, nor by will upon her death — she died intestate— it became irrevocable in June, 1933, when she died.
 
 Pozzuto’s
 
 Estate, 124 Pa. Superior Ct. 93, 188 A. 209. But it was so limited by its terms that any unused balance at the time Nellie reached the age of twenty-one was to revert to Mary. This event has happened. The question is whether Mary, under the terms of her arrangement with John, had the right to so limit it.
 
 *322
 
 Stated in another way, the question is whether a
 
 parol
 
 trust has been established by proof of an oral agreement between John and Mary contrary to the terms of the
 
 express
 
 trust which Mary created.
 

 One who seeks to establish a parol trust “must furnish proof which is clear, precise and indubitable.”
 
 Gritz v. Gritz,
 
 342 Pa. 516, 518, 21 A. (2d) 713. None of our cases are exactly similar to this one. In them the problem was to determine who was entitled to the outright payment of all the proceeds — who was the real beneficiary intended. But we think the requirement of strict proof is equally, if not more clearly indicated, where as here, the claimant, by parol evidence, seeks to modify the terms of an express trust created by the named beneficiary. And even if we emulate the lower court
 
 [2]
 
 and conclude that
 
 some
 
 form of trust was intended by John for the benefit of Nellie, we are not satisfied there was sufficient evidence to support a finding that the trust intended differed from 'the trust created. According to the testimony of John’s second wife, his intention was to provide for the “support and education” of Nellie, who, at the time of his death, was a minor aged ten. It is reasonable to suppose that John knew the most pressing need for education and support would exist in the period prior to her maturity. And it is equally reasonable that he may have wanted any part of the fund not needed for this purpose to revert to the benefit of his mother. The point is that the evidence that he did
 
 not
 
 so intend it is not, in our opinion, “clear, precise and indubitable.” And the fact that Nellie, through a guardian, could have secured some or
 
 *323
 
 all of the funds for support and education, if application had been made while she was a minor, is no reason why she should be permitted to do so after the trust, by its terms, ended.
 

 The order of the court sustaining the exceptions to the account and awarding the fund, with interest, to Nellie F. Gorgas, is reversed and the exceptions dismissed.
 

 [1]
 

 In March 1933, William Gorgas, Mary’s husband, was added as “trustee also, having the privilege of withdrawing funds.” He died in 1935.
 

 [2]
 

 Which we are not bound to do even though there is some evidence to support his finding because the judge who saw the witnesses and heard the testimony died before the adjudication was made by his successor.
 
 Gilbraith’s Estate,
 
 270 Pa. 288, 113 A. 361;
 
 Schaeffer v. Jones,
 
 293 Pa. 529, 535, 143 A. 197;
 
 Rutter v. Rutter,
 
 292 Pa. 343, 346, 141 A. 146.