Rodgers Estate.

Argued May 27, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

Appeal, No. 116,

*Francis X. McClanaghan,* with him *Louis F. Mc-Cabe,* for appellants.

*W. LeRoy McKinley,* with him *John J. Mitchell, Jr.,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, June 26, 1953:

Did Elizabeth M. Rodgers revoke either during her lifetime or by will the tentative trust which she had established for her sister, Martha B. Rodgers? This is the single question presented by the appeal.

The issue is raised by the petition of John J. Mitchell, Jr., Esq., executor of the will of Elizabeth Rodgers, for a citation directed to the guardian of the

estate of Martha B. Rodgers, incompetent, and to the Beneficial Saving Fund Society, to show cause why the fund on deposit in that society in an account entitled "Elizabeth M. Rodgers in trust for sister Martha B. Rodgers" should not be paid to the executor. After answer on the merits the matter was referred for hearing to a master who concluded in an exhaustive report that the trust had been revoked and that the fund should be awarded to the executor as part of the decedent's estate. Exceptions were argued in the orphans' court and the matter referred back to the master for a further finding. The master affirmed his earlier conclusion in a second report, and this was approved by the orphans' court in banc. This appeal followed.

The doctrine of tentative trusts was evolved by the courts of New York in what Justice (later Chief Justice) SCHAFFER described as "an effort to retain for the depositor the complete control of the fund during his life and yet secure to the beneficiary any balance standing in the account at the death of the depositor": *Scanlon's Estate,* 313 Pa. 424, 427, 169 A. 106. In that case we adopted the New York rule as the law of Pennsylvania, quoting as follows from *In re Totten,* 179 N. Y. 112, 71 N. E. 748: " '. . . A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration such as delivery of the pass book or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor.' " Since

then, despite some criticism of the rule (see e.g., dissenting opinion of Mr. Justice BELL in *Ingels Estate,* 372 Pa. 171, 182, 92 A. 2d 881), it has become an integrated part of our jurisprudence and has been applied time and again by our appellate courts and courts of first instance. See, *inter alia*: *Tunnell's Estate,* 325 Pa. 554, 190 A. 906; *Bearinger's Estate,* 336 Pa. 253, 9 A. 2d 342; *Brown v. Monaca Federal Savings and Loan Association,* 352 Pa. 1, 42 A. 2d 50; *Shapley Trust,* 353 Pa. 499, 46 A. 2d 227; *Vierling v. Ellwood City Federal Savings & Loan Association,* 356 Pa. 350, 52 A. 2d 224; *Pozzuto's Estate,* 124 Pa. Superior Ct. 93, 188 A. 209; *Downey v. Duquesne City Bank,* 146 Pa. Superior Ct. 289, 22 A. 2d 124; *Gorgas' Estate,* 147 Pa. Superior Ct. 319, 24 A. 2d 171; *Banca D'Italia & Trust Company v. Giordano,* 154 Pa. Superior Ct. 452, 36 A. 2d 242.

Our decisions have repeatedly acknowledged the New York origin of the rule and have adverted to the reports of that state for guidance in exploring its many ramifications. On the question of revocation now before us, we once again find no definitive authority in Pennsylvania but a number of decisions in New York. The latter cases have been concisely summarized in a recent opinion of the Surrogate's Court of Kings County, *In re Koster's Will,* 119 N. Y. S. 2d 2, at pp. 4, 5: "It has been held that, among other means, a tentative trust may be revoked: (1) by a transfer of the form of the deposit; (2) by the terms of a will of a depositor, Moran v. Ferchland, 113 Misc. 1, 184 N. Y. S. 428; Matter of Brazil's Estate, 127 Misc. 288, 216 N. Y. S. 430; Matter of Schrier's Estate, 145 Misc. 593, 260 N. Y. S. 610; Matter of Beck's Estate, 260 App. Div. 651, 23 N. Y. S. 2d 525; In re Shelley's Estate, 50 N. Y. S. 2d 570; Walsh v. Emigrant Industrial Savings Bank, 106 Misc. 628, 176 N. Y. S. 418, affirmed

192 App. Div. 908, 182 N. Y. S. 956, affirmed 233
N. Y. 512, 135 N. E. 897; (3) by the depositor's un-
equivocal act or declaration of disaffirmance, Walsh
v. Emigrant Industrial Savings Bank, supra; Matter
of Beagan's Estate, 112 Misc. 292, 183 N. Y. S. 941;
Matter of Richardson's Estate, 134 Misc. 174, 235
N. Y. S. 747; Cf. Matter of Halpern's Estate, 303 N. Y.
33, 100 N. E. 2d 120; and (4) by facts and circum-
stances resulting in inadequacy of the estate assets to
satisfy the testamentary gifts, funeral and administra-
tion expenses, taxes and other charges. Matter of
Murray's Estate, 143 Misc. 499, 256 N. Y. S. 815; Mat-
ter of Mannix' Estate, 147 Misc. 479, 264 N. Y. S. 24;
Matter of Beagan, supra; Matter of Reich's Estate, 146
Misc. 616, 262 N. Y. S. 623." The master and the
learned court below found that revocation had been
accomplished in the present case by either of the last
two of the four means above enumerated.

Such decision does not rest upon New York author-
ity alone. The Restatement of Trusts definitely sup-
ports the same view in the following excerpts from
the comment to sec. 58: "b. *Revocation of tentative
trust.* A. tentative trust of a savings deposit in a bank
can be revoked by the depositor at any time during
his lifetime, by a manifestation of his intention to re-
voke the trust. *No particular formalities are necessary
to manifest such an intention.*" (latter italics ours)

"A tentative trust of a savings deposit can be re-
voked by the depositor by his will. It is so revoked
where by will he makes a disposition of the bank de-
posit in favor of anyone other than the beneficiary.
It is also revoked where by will he makes a disposi-
tion of his property which cannot be carried out ex-
cept by using the deposit, as for example where he
leaves no other property than the deposit." Indeed,
the original statement of the *Totten* rule quoted in

*Scanlon's Estate,* supra, clearly implies that revocation may be accomplished by "some decisive act or declaration of disaffirmance." Implied recognition of the right to revoke orally is also found in *Krewson Estate,* 154 Pa. Superior Ct. 509, 36 A. 2d 250, wherein it is said through Judge BALDRIGE (p. 511) : "The alleged oral declarations made by the decedent . . . were not sufficiently clear and unambiguous to constitute a parol revocation of the written declaration of trust made with the deposit."

What was the evidence of oral revocation which satisfied the master and the orphans' court in banc in the present case? Mr. Mitchell, the executor, a reputable member of the bar of Philadelphia county, was the scrivener of the will. He was permitted to testify to his conversations with the testatrix leading to the preparation of her will. This testimony was admitted over the objection of the appellants, who contended that the will was clear and unambiguous and not subject to oral explanation. We agree with this contention of appellants and would exclude the testimony if it were offered only as explanation of the will: *Mizener's Estate,* 262 Pa. 62, 105 A. 46; *Prime's Petition,* 335 Pa. 218, 6 A. 2d 530. But, as above stated, the creator of a tentative trust has power to revoke it by oral declarations, and the testimony of testatrix's attorney was clearly admissible to show her intention that the trust be revoked, entirely apart from any question of interpretation of the written will. Testatrix told Mr. Mitchell that her sister Martha was the prime object of her bounty, that Martha was sole beneficiary under an earlier will but was now ". . . infirm mentally and physically . . . can't look after things for herself, and somebody will have to look after her in case I go first". She approved the attorney's suggestion of a trust for maintenance and support with power to in-

vade principal and discussed with him, without reaching any definite conclusion, the Catholic charities to whom she would bequeath the remainder. According to Mr. Mitchell's testimony, she then described the property which would be the subject of this trust as follows: " '. . . we have some stocks and we own the property we live in at 1805 Wylie Street,' and she said, 'my money is on deposit at the Beneficial Saving Fund Society.' " It is undisputed that the only money which testatrix had on deposit at that bank was the tentative trust fund in question. Unless she was referring to that fund when she spoke of her money on deposit at the Beneficial, her words were meaningless. Hence this conversation with the scrivener constitutes a clear declaration by the decedent of her desire to revoke the tentative trust and with that money make more appropriate arrangements for the care of her failing sister.

Furthermore, we agree with the court below that the will itself was sufficient to effect a revocation by the fourth means referred to in *In re Koster's Will*, supra. Findings of fact by the master to which no exceptions were taken establish that at the time of the making of the will, decedent's only assets other than the savings fund account were approximately $500.00 in cash, fractional interests in real estate worth about $2,000.00, an expectancy of a legacy of about $2,000.00, and joint ownership with her sister of securities stated to be small in value and a checking account of about $300.00. It requires no legal or financial expert to conclude that after payment of her own debts and funeral and administration expenses, her assets other than the savings account in dispute would be pitifully inadequate for the establishment of a trust for maintenance and support. It would be ascribing extraordinarily poor judgment to testatrix to suppose that she went

to the trouble of creating an elaborate testamentary trust for the relatively small assets she possessed outside the savings account and yet intended the fund which comprised the bulk of her estate to go to the sister absolutely. This account contained $34,356.30.

Appellants also argue that, because the parties lived together sharing all expenses, had reciprocal wills and reciprocal tentative trusts with common possession of the pass books, the trusts which they created were irrevocable. The master and the court below found these circumstances inadequate to justify an inference that the sisters intended to make their trusts irrevocable. We are entirely in accord with this conclusion. We recently had occasion to discuss the quantum of evidence necessary to establish that a settlor intended to impart a quality of irrevocability to a tentative trust: *Ingels Estate,* 372 Pa. 171, 92 A. 2d 881. The circumstantial evidence here present falls far short of the standard we there established; viz., " 'clear and unambiguous language or conduct' indicating that [settlor] intended to make the tentative trust irrevocable." (p. 177)

This tentative trust was revoked by testatrix in her lifetime by her oral declarations. But in any event the decedent by her will by establishing a testamentary scheme whereunder her assets would have been wholly inadequate, likewise disclosed an unequivocal intent of such revocation since her scheme failed unless the trust fund was included.

Decree affirmed; costs to be paid out of the fund.