## Krasney Estate

Before Klein, P. J., Bolger, Lefever, Saylor and Shoyer, JJ.

*Abraham J. Golden*, for exceptant.
*Martin J. Resnick* and *Thomas Z. Minehart*, contra.

SHOYER, J., May 20, 1957.—The exceptions raise

the single issue of whether a widow claiming against her husband's estate under section 8 of the Wills Act of April 24, 1947, P. L. 89, and section 11 of the Estates Act of April 24, 1947, P. L. 100, can reach the proceeds of a tentative trust which decedent created in favor of his minor grandson in 1942, and from which decedent made numerous withdrawals prior to his death which occurred after the effective date of the Estates Act. The learned auditing judge held that this fund was part of decedent's estate for the purpose of determining the share to which the widow was entitled by her election to take against decedent's will. We are unanimously agreed that he was clearly right in so holding.

The parties were married on November 22, 1940. Both had been previously married and each spouse had two or more children living as a result of the earlier marriages.

On October 6, 1942, decedent opened a savings account entitled "Harry Krasney in Trust for Ronald Petrofsky" with an initial deposit of $200. The signature card was produced in evidence. After the name "Ronald Petrofsky" it bears the notation (written apparently by a clerk as it is not in the handwriting of decedent) "grandson, 2 yrs.", and also an address.

Decedent died November 13, 1954, leaving a will wherein, after directing the payment of his debts, expenses of last illness and cost of interment, he disposed of the residue of his estate giving one third to his wife, Stella Krasney, and the other two thirds to be divided among the six children of his former marriage.

On March 22, 1955, his widow filed her election to take against the will of decedent and in addition elected "to treat the trust created by Harry Krasney, deceased, in favor of Ronald Petrofsky (being Philadelphia Saving Fund Society Account No. B 97,189) as a testamentary disposition under the Estates Act, Act of April 24, 1947, P. L. 100, Sec. 11, 20 P. S. Sec.

301.11." The executor noted the existence of the savings deposit in his inventory, stating the amount as "$4,085.82". He listed the same item short in his account.

Notice of the audit, given to all parties including the attorney for the guardian of the minor grandson, advised that the court would be "requested to rule whether the bank account with the Phila. Saving Fund Society, titled Harry Krasney in trust for Ronald Petrofsky, created in November 1941, is to be treated as a testamentary disposition insofar as the trustee's surviving spouse is concerned".

The widow died prior to the audit. Counsel appeared for her estate, presented the bank book and made claim for one third of the balance of the deposit. An employe of the saving fund society testified that their records showed a total of 13 withdrawals from the account, the earliest being on November 28, 1942, of $200, and the last on March 4, 1954, for $149.62. The total of the 13 withdrawals approximated $5,500. The 10 withdrawal slips produced in court were signed merely "Harry Krasney", although on four of them the succeeding word "trustee" had been rubber-stamped. Six bore no description whatsoever after the signature. An earlier account in the same society was opened November 10, 1941, and entitled exactly as the account in issue. Four withdrawals totaling $450 were made prior to October 27, 1942, when the balance of $509.10 was withdrawn and deposited in the second account, thus closing out the earlier one.

Exceptions were filed only by the guardian of the minor beneficiary, and these complain of the failure of the learned auditing judge to award the *entire* corpus of the savings account to his ward.

The holding of the learned auditing judge, arrived at after full consideration of the above facts, can be readily sustained on sound principles of law which support three relevant and established legal theories:

First, as a modern development of the law of tentative trusts; second, as a testamentary disposition of his estate by decedent which, under the case law of Pennsylvania, can be reached by his surviving spouse claiming her statutory rights in his estate; third, as a conveyance by decedent to defeat the marital rights of his surviving spouse which she can reach to the extent of her intestate share under section 11 of the Estates Act of April 24, 1947, P. L. 100, 20 PS §301.11.

1. Since our Supreme Court in 1933, in Scanlon's Estate, 313 Pa. 424, expressly adopted the tentative trust theory of New York as formally stated in that jurisdiction in 1904 (In re Totten, 179 N. Y. 112, 71 N. E. 748), the law of savings deposits "in trust" has been slowly but progressively developing. Judicially the transaction was designated " 'a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration such as delivery of the pass book or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor.' . . . 'In the absence of evidence of a different intention of the depositor, the mere fact that a deposit was made in a savings bank in the name of a depositor "as trustee" for another person is sufficient to show an intention to create a revocable trust. . . . The depositor may at any time withdraw any part of the deposit during his lifetime, or otherwise revoke the trust in whole or in part at any time during his lifetime . . . or by will, but on his death the beneficiary is entitled to the amount remaining on deposit if the depositor has not revoked the trust.' ": Scanlon's Estate, supra, p. 427, quoting from In re Totten, and

page 428, quoting from Restatement of the Law of Trusts, Comment *a*.

In recognizing that deposits in this form exist in great numbers on the books of savings institutions, the courts are also cognizant of the fact that not all of these have been created for the same purpose or with the same intention. The depositor may have intended a tentative trust, an irrevocable trust, a revocable trust, a gift inter vivos or a fund for his own use, concealed as to ownership, with a possible testamentary bequest of the remainder. Any doubt as to the ownership of the deposit following his death can be resolved only by discovering his intention while living: Ingels Estate, 372 Pa. 171, 177 (1952). Extrinsic evidence is admissible to establish this intention: In re Totten, supra; Scanlon's Estate, supra; Ingels Estate, supra; Rodgers Estate, 374 Pa. 246, 251 (1953); Restatement of the Law of Trusts, §58, Comment *a*. Ordinarily these deposits are exceptions to the general rule that makes similar declarations of trust testamentary (Restatement of the Law of Trusts, §57(3); 1 Scott on Trusts (2d ed.), §57.6, p. 477 [1]), but if it becomes apparent that the depositor's primary intent was a testamentary disposition, then his beneficiary designation must be reconciled with the Statute of Wills, at least so far as the surviving spouse and creditors are concerned: Matter of Halpern, 303 N. Y. 33, 100 N. E. 2d 120 (1951); Iafolla Estate, 380 Pa. 391 (1955); Banca D'Italia & Trust Co. v. Giordano, 154 Pa. Superior Ct. 452 (1944); 1 Scott on Trusts (2d ed.) §58.5.

Courts have not always been specific as to the theory on which they have permitted the designated bene-

---

[1] See, however, Second Restatement, Trusts, §57, Comment *h*. Declaration of trusts, Tentative Draft, April 19, 1957.

ficiary to recover, and certainly the latter doesn't care so long as he receives the deposit. "It is easier, of course, to sustain the trust on the theory that it arises at the time of the deposit, although it is revocable during the lifetime of the depositor or even by his will, than it is to sustain it on the theory that it does not arise until his death. In the latter case it is more obviously a testamentary disposition": 1 Scott on Trusts (2d ed.) §58.4A, p. 495.

From time to time as new problems regarding tentative trusts have confronted our Pennsylvania courts, the latter have not hesitated to acknowledge the New York origin of the rule and to look to the courts of that State for guidance: Rodgers Estate, supra, page 249. The New York reports contain literally scores of decisions on this subject. It is interesting to note that apparently no attack on a tentative trust in Pennsylvania was made by a surviving spouse until after the passage of the Estates Act: Black Estate, 73 D. & C. 86, 88 (1950). In New York it has been held without the benefit of any such statute, that at the election of a surviving spouse, a tentative trust may be deemed testamentary, illusory and therefore a part of decedent's estate in which the surviving spouse may participate: Krause v. Krause, 285 N. Y. 27, 32 N. E. 2d 779 (1941). Following the decision of the Krause case the Committee's comment to section 58 of the Restatement of the Law of Trusts was supplemented in 1948 to read as follows:

"*cc. Surviving spouse of depositor.* Although the surviving spouse in claiming his or her statutory distributive share of the estate of the decedent is not entitled to include in the estate property transferred during his lifetime by the decedent in trust for himself for life with remainder to others, even though the decedent reserved a power of revocation (see sec. 57,

Comment *c*), the surviving spouse of a person who makes a savings deposit upon a tentative trust can reach the deposit."

A judicial holding in favor of the surviving spouse was also forecast by Bregy, Pennsylvania Intestate, Wills and Estates Acts of 1947, at page 5859, where we read that: "Other situations where an inter vivos transfer of personalty might be regarded as testamentary as to the surviving spouse even without the aid of the [Estates Act of 1947] are tentative trusts . . . on the analogy of cases holding that such transfers are testamentary as to creditors."

Since the depositor has such extensive powers over the deposit as to justify treating him in substance as its unrestricted owner, his creditors have always been permitted to reach it (Restatement of the Law of Trusts, §58, Comment *c*), at least where the creation of the deposit was obviously a fraud on creditors' rights: Banca D'Italia & Trust Co. v. Giordano, 154 Pa. Superior Ct. 452 (1944). A wife compelled to sue for her rights is a "creditor in fact" (Bouslough v. Bouslough, 68 Pa. 495, 499 (1871)) and should be allowed to reach a tentative trust just like a creditor: 1 Scott on Trusts (2d ed.), §58.5.

On the authority of the restatement and the New York cases, as well as by analogy to the claims of creditors, we hold that the surviving spouse is entitled to her intestate share of the savings bank deposit.

2. The Krause decision was based on a previous holding by the New York Court of Appeals in Newman v. Dore, 275 N. Y. 371, 9 N. E. 2d 966 (1937). There decedent, having provided for his wife the minimum required by the New York statute relating to testamentary dispositions, viz., income for life from one third of his estate, proceeded to transfer to others by inter vivos trust agreements all his real and personal property. Under the formal agreements executed three

days before his death, decedent reserved to himself the entire income for life, a right of revocation, and in general the powers he granted to the trustees were in terms made "subject to the settlor's control during his life", and could be exercised "in such manner only as the settlor shall from time to time direct in writing". After referring with approval to various Pennsylvania authorities, the New York court held the conveyance was clearly "illusory and intended only as a mask for the effective retention by the settlor of the property which in form he had conveyed" and was, therefore, "an unlawful invasion of the expectant interest of the wife" as guaranteed her under the New York Decedent Estate Law.

In Matter of Halpern, 303 N. Y. 33, 100 N. E. 2d 120 (1951), the Court of Appeals upheld the action of the lower court in setting aside a tentative trust in favor of decedent's granddaughter to the extent of the surviving spouse's share. Majority and minority opinions concurred in the result because the granddaughter had not appealed. Both opinions stressed that Krause v. Krause, supra, was merely the application of the illusory transfer theory to tentative trusts and the majority stated there was "nothing illusory about a tentative trust as such" and such "trusts if real and not merely colorable or pretended, are valid transfers with legally fixed effects".

In Pengelly Estate, 374 Pa. 358 (1953), our Supreme Court dealt with a situation not unlike that in Newman v. Dore. Testator, separated from his wife since 1908, created a formal trust agreement providing for income to himself with power of consumption, remainder to a woman alleged to be his paramour. The widow contended that the trust instrument was testamentary and illusory in character, that it created nothing more than an agency relationship between decedent and the trustee, and that it was not made in

good faith but for the purpose of defeating the widow's rights. Our Supreme Court held that it was unnecessary to find that there was an intention on the part of settlor to defraud his wife but that the power to consume, as there stated, amounted to power to revoke and both in substance and effect settlor could exercise such complete control over the trust fund as to make the trustee his mere *agent*. The court characterized the trust instrument as testamentary in character, cited with approval Restatement of the Law of Trusts, §57(2), in support of the agency theory which it was adopting, and directed that *all* assets of the alleged inter vivos trust be surrendered and transferred to decedent's estate subject to the election by the widow to take against the will.

In the instant case it will be noted that not only did Krasney have full control over the deposit in trust for his grandson but on numerous occasions he chose to exercise this control by making withdrawals on his individual signature without bothering even to designate himself as trustee. His active use of the 1941 account solely for his own purposes is added evidence of his intention not to create an irrevocable trust: Ingels Estate, supra, page 178(c). Clearly under the authority of Pengelly, supra, and Banca D'Italia, supra, there was here a manifest intention by the depositor to use this fund as his own and not to set up an inter vivos trust. As the creditors reached the savings deposit in the Banca D'Italia case, so should this widow be allowed to reach it. In Banca D'Italia, supra, the court found that the depositor intended to retain the beneficial incidents of ownership in the amounts deposited, and that he set up a trust in form only in an effort to defraud his creditors. In Pengelly Estate, supra, as pointed out by our Supreme Court, it was unnecessary to find an intent to defraud the surviving spouse. Mere intention, by the reservation of complete

control, to retain all the incidents of ownership was sufficient to establish the testamentary nature of the trust which therefore could be reached by the widow's taking against the will. That, too, is a circumstance here and the same result must follow. It is the public policy of the Commonwealth to protect the rights of widows from fraudulent transfers by their spouses (Pengelly Estate, supra, p. 369), and when once the testamentary nature of the transaction had been established, regardless of the husband's motives, the learned auditing judge properly protected the rights of the widow just as he would have the rights of a creditor.[2]

3. McKean Estate, 366 Pa. 192 (1951), held that a formal revocable trust created prior to the effective date of the Estates Act (January 1, 1948) could not be reached by a surviving spouse electing under section 11 to take against her husband's will. Section 11 of the Estates Act of 1947 (prior to the amendment of 1956) read as follows: "A conveyance of assets by a person who retains a power of appointment by will, or a power of revocation or consumption over the principal thereof shall, at the election of his surviving spouse, be treated as a testamentary disposition so far as the surviving spouse is concerned to the extent to which the power has been reserved, but the right of the surviving spouse shall be subject to the rights of

---

[2] The distinction between the New York and Pennsylvania theories seems to be that the courts of the former jurisdiction will hold as illusory and fraudulent an inter vivos trust where settlor has retained an excessive amount of control, such excess as will be construed by the Pennsylvania courts to establish a mere agency relationship. This agency agreement providing for a testamentary disposition may be rescinded by the surviving spouse as violating the requirements of the Statute of Wills. The difference between an independent trustee and one who is also agent for the settlor may be only one of degree, but it is nevertheless a valid distinction. See 1 Scott on Trusts (2d ed.), §57.2.

any income beneficiary whose interest in income becomes vested in enjoyment prior to the death of the conveyor."

Following the well established law of this Commonwealth,[3] the court held (p. 195) that "where a settlor, by his deed vests a present interest in the beneficiaries but reserves a beneficial interest and also a power to revoke or modify the deed in whole or part, such interests are not thereby constituted mere *expectancies* but are *present vested interests* [citing authorities]." The interest of the trust beneficiaries being vested *prior* to the Estates Act, the surviving spouse could obtain no retroactive benefits therefrom.

In Iafolla Estate, 380 Pa. 391 (1955), our Supreme Court recently held that the widow's releases given after her husband's death were valid and effective to waive her rights in the tentative trusts which were created by decedent in favor of his children. The court took pains, however, to discuss at length the basis for the widow's claim, distinguished the tentative trust situation from that in McKean Estate, and stated that "a difference, if not a crucial legal distinction, may be noted between a formally created inter vivos trust

---

[3] See the Comment of the Joint State Government Commission to Section 11: "This section preserves for the surviving spouse the right to share in the decedent's assets where the decedent has retained important rights of ownership at death. Rights of the surviving spouse in such circumstances have been recognized in other states: Cf. Newman v. Dore, 275 N. Y. 371, annot. 12 Temple L. Q. 129, 36 Mich. L. R. 496. However, Pennsylvania has given little opportunity to the surviving spouse to share when legal title has passed from the decedent prior to death: Cf. Beirne v. Continental-Equitable T. & T. Co., 307 Pa. 570; Windolph v. Girard Trust Co., 245 Pa. 349; Rynier's Est., 347 Pa. 471; contra Diedel's Est., 32 D. & C. 685. Indeed, the situation in Pennsylvania has been such that it was stated correctly that 'It is only the stupid husband, who, against his wishes, would be forced to allow his wife to share in his personalty.': Comment (1939) 5 Univ. of Pitts. L. Rev., 78, p. 87."

subject to the reserved right of the settlor to revoke it and a tentative trust, that is, one that by its very nature is provisional during the lifetime of the settlor. The type first above-mentioned may be destroyed only by a positive act of the settlor (viz., revocation) which may never occur, while the tentative type requires a positive act (viz., death of the settlor), which is bound to occur, to effectuate it.[4] It may, therefore, be argued that, as to tentative trusts created prior to the effective date of the Estates Act but whose settlors did not die until after the effective date of the act, section 11 actually controls prospectively. By its terms, section 11 applies 'to conveyances effective on and after' its own specified effective date. Consequently, until the death of the settlor of a tentative trust the beneficial interest is a mere expectancy and not vested. Otherwise, if vested, creditors of the settlor could not attach the trust *res* as his property." Following this expression of our Supreme Court, the holding of the learned auditing judge can also be sustained under section 11 of the Estates Act of 1947.

Counsel for the grandson argues strenuously that the death of the widow after the due filing of her election but prior to audit has subordinated the merits of her claim to that of the grandson. We dismiss this contention. No reason appears either in law or equity why the claims of her heirs should be weakened by her death. Presumably her demand while living to obtain her full marital rights even at the expense of one of her deceased husband's next of kin, would continue without abatement for the benefit of her own heirs after her death.

---

[4] Professor Austin Wakeman Scott interpolates the New York decisions: "Apparently what is meant, however, is that . . . the trust is subject to a condition subsequent of revocation rather than to a condition precedent of the death of the depositor": 1 Scott on Trusts (2d ed.) §58.3, p. 484.

A matter of procedure requires comment. By article I, sec. 102(6) (iv), and article III, sec. 301(3) of the Orphans' Court Act of August 10, 1951, P. L. 1163, 20 PS §2080.102 and §2080.301, this court is given jurisdiction over tentative trusts. A citation should have issued at the request of the widow directed to decedent's executor, the guardian of the minor's estate, and the Philadelphia Saving Fund Society to bring the latter two parties on the record and the fund into court: Iafolla Estate, supra, page 393. The balance of the savings deposit, as stated above, has been listed short in the executor's account. The widow's estate and the guardian of the minor, by the general appearances of their counsel, have submitted themselves to the jurisdiction of this court. The Philadelphia Saving Fund Society, by letter of counsel entered of record, has agreed to abide by our decision disposing of the issues which have been raised and argued before us. The Society admits it holds $4,337.21 in account No. B97189 solely as a stakeholder. Distribution of this fund and accrued interest in the proportion of one third to the estate of Stella Krasney, deceased, and the remaining two thirds to Herman Gewertz, guardian of the estate of Ronald Petrofsky, a minor, will be ordered.

The exceptions to the adjudication are dismissed for the above-stated reasons, and the adjudication, as supplemented by the following decree, is confirmed absolutely.

### Decree

And now, May 20, 1957, it is ordered and decreed:

That Thomas Z. Minehart, Esq., is directed to forthwith present to the Philadelphia Saving Fund Society its passbook No. B97189 entitled "Harry Krasney in trust for Ronald Petrofsky".

The Philadelphia Saving Fund Society is ordered, upon receipt of proper acknowlegments and releases,

to pay the sum on deposit, $4,337.21, in the aforesaid account, together with interest at the rate stated by the Society, to date of payment: One third to Thomas Z. Minehart, Esq., attorney of record for the estate of Stella Krasney, deceased, and two thirds to Abraham J. Golden, Esq., attorney of record for Herman Gewertz, guardian of the estate of Ronald Petrofsky, a minor.

