## Agostini Estate

*Stephen M. Cushmore,* for petitioners.

*J. Brooke Aker,* for respondents.

ADJUDICATION BY TREDINNICK, J., AUGUST 31, 1981:

Louis Agostini and Helen Mickel, executors under the last will of Margaret Agostini, seek an order directing the Bank and Trust Company of Old York Road to release the estate funds held by it in three $5,000 certificates purchased by respondent in trust for her children. These funds are the proceeds of three tentative trust accounts in decedent's name at her death.

Decedent's will, dated May 21, 1979, was offered for probate before the Register of Wills of Montgomery County, Pennsylvania. A contest over the validity of the will was initiated by respondent to this petition, who alleged that it was a product of an insane delusion or, alternatively, resulted from undue influence. This court heard the contest and issued an opinion and decree dated December 5, 1980, admitting the will to probate and finding there was no insane delusion or undue influence. Respondent filed exceptions which were briefed and argued and then dismissed by this court. Thereafter, respondent took an appeal to the Pennsylvania Superior Court, which is pending.

Decedent resided in Florida from 1972 to November, 1978.

In 1978, she moved to Pennsylvania and became domiciled and resident there. She died on July 4, 1979. At death she owned three certificates of deposit issued by First Family Federal Savings and Loan Association of Eustis, Florida. Each certificate was in the initial deposit amount of $5,000. All were issued on January 7, 1977 and scheduled to mature on January 7, 1981. Account #59115 was issued to "Margaret Agostini, Trustee, Luisa Leps, Beneficiary." Accounts #59116 and #59117 had similar designations for Richard Leps, Jr. and for Steven Leps. Luisa, Richard and Steven are decedent's grandchildren (children of respondent, Maria Agostini Leps). On the day that decedent signed the contested will, she sent a handwritten letter to the Florida bank directing that the beneficiaries be removed from the certificates. The bank replied to her letter dated May 24, 1979, specifying its own specific internal procedures for making the change, including the return of the certificates of deposit. However, the bank procedures were never complied with.

After decedent's death, respondent obtained the proceeds of the three certificates on behalf of her children and deposited the funds in her own name in trust for her children at the Bank and Trust Company of Old York Road. The funds were "frozen" by this court's order dated March 11, 1980.

The parties, through their respective counsel, agreed that the instant matter would be resolved without any separate hearing, based upon the testimony and exhibits produced in the will contest proceeding and the additional facts and documents referred to in three separate stipulations of counsel dated June 16, 1981, July 2, 1981 and July 14, 1981.

The issues presented are: (1) whether a tentative trust or a completed gift resulted from the registration of the certificates in decedent's name as trustee for her grandchildren; (2) if a tentative trust resulted, whether the decedent effectively revoked the trust, and (3) whether Pennsylvania or Florida law controls the determination of these issues.

Respondent contends that Florida law governs the resolution of this problem. However, this court concludes that Pennsylvania law is controlling.

Pennsylvania has adopted a "government interest analy-

sis" approach to conflict of laws questions: *Griffith v. United Air Lines,* 416 Pa. 1. An overview of Pennsylvania Supreme Court cases indicates that the government interest analysis, first adopted in *Griffith,* applies to all conflict issues, not merely to tort cases, the context in which this analysis was first adopted. In *Griffith, supra,* at 22, the Supreme Court announced that "[w]e are at the beginning of the development of a workable, fair and flexible approach to choice of law which will become more certain as it is tested and further refined when applied to specified cases before our courts." Justice Roberts in *McSwain v. McSwain,* 420 Pa. 86, 94, used language which suggests that *Griffith* is applicable to all choice of law questions. He stated "[w]hat should be sought is an analysis of the extent to which one state rather than another has demonstrated, by reason of its policies and their connection and relevance to the matter in dispute, a priority of interest in the application of its rule of law."

*Hunter Adoption Case,* 421 Pa. 287, is another case that supports the view that *Griffith* is applicable to Pennsylvania choice of law questions generally. In *Hunter,* natural mother gave birth to a child in West Virginia and signed relinquishment forms in that state. Child and natural mother subsequently moved to Pennsylvania where prospective adoptive parents resided. The Supreme Court held that Pennsylvania "by reason of the subject matter of the dispute and the status of the parties as domiciliaries of this Commonwealth has an overriding and continuous interest in the resolution of the issues in contention:" *Hunter, supra,* at 290.

In the present case, Pennsylvaia is the predominately concerned jurisdiction. All of the parties involved reside in Pennsylvania and the trust property in question has been moved to this state. Thus, under the government interest analysis, Pennsylvania controls the resolution of this dispute.

The next issue for determination is whether a tentative trust or a completed gift resulted from the registration of the certificates of deposit in decedent's name as trustee for her grandchildren. Sections 6301 and 6303(b) of the PEF Code[1] provide the answer to this question. The Official Advisory

---

1. The Act of July 9, 1976, P.L. 547, No. 134, §1, 20 P.S. §6301 and 20 P.S. §6303(b).

Committee Comment states[2] "[t]his (§6301 - definitions) and the sections which follow are designed to reduce certain questions concerning ... the so-called Totten trust account. ..." These sections extend the Totten trust doctrine to include certificates of deposit. Section 6303 (b) of the PEF Code states:

> Unless a contrary intent is manifested by the terms of the account . . . or there is other clear and convincing evidence of an irrevocable trust, a trust account belongs beneficially to the trustee during his lifetime . . .

Section 6301 defines the terms "Trust account" and "Account." A Trust account is:

> An account in the name of one or more parties as trustee for one or more beneficiaries where the relationship is established by the form of the account and the deposit agreement with the financial institution and there is no subject of the trust other than the sum on deposit in the account; it is not essential that payment to the beneficiary be mentioned in the deposit agreement . . .

An Account:

> means a contract of deposit of funds between a depositor and a financial institution, and includes a . . . certificate of deposit . . .

The effective date of the Act is September 1, 1976, and the certificates in question were purchased on January 7, 1977. The Act, therefore, is specifically applicable. Section 6303 (b) places ownership of the trust account beneficially in the trustee during his lifetime "unless a contrary intent is manifested by the terms of the account ... or there is clear and convincing evidence of an irrevocable trust."[3] As no evidence has been presented indicating decedent intended to make an irrevocable gift, this court finds that a tentative trust was created when decedent purchased the certificates in trust for her grandchildren.

The only remaining issue for determination is whether decedent effectively revoked the trust. Section 6304 (b) states that "[a]t death of the trustee ... any sum remaining on deposit belongs to the person ... named as beneficiary, if surviving ... unless there is clear and convincing evidence of a contrary intent."[4] An examination of Pennsylvania case law reveals that revocation of a tentative trust may be accom-

---

2. See Comment at 20 P.S. §6301.

3 The Act of July 9, 1976, P.L. 547, No. 134, §1, 20 P.S. §6303 (b).

4. The Act of July 9, 1976, P.L. 547, No. 134, §1, 20 P.S. §6304 (b).

plished by "some decisive act or declaration of disaffirmance:" *Rodgers Est.*, 374 Pa. 246, 251; *Krewson Est.*, 154 Pa. Super. 509. No particular formalities are necessary to manifest such an intention: *Estate of McFetridge*, 472 Pa. 546.

This court finds that decedent's letter, dated May 21, 1979, to the First Family Federal Savings & Loan was a clear revocation of the trust. In that letter decedent stated:

> I wish to ask you if you would *put my certificates in my name only with no beneficiaries attached* ...
>
> Tomorrow I am having my big toe amputated and I *don't want any beneficiaries on the certificates.* (Italics supplied).

Respondent argues that because decedent did not take any of the steps prescribed in the Bank's reply letter no revocation occurred. This contention is without merit. Section 6304(b) and Pennsylvania case law require a decisive, clear and unequivocal act manifesting an intention to revoke. Under this law compliance with internal bank procedures is not required.

Accordingly, we enter the following:

And Now, August 31, 1981, after consideration of briefs and argument thereon, the petition of Louis Agostini and Helen Mickel, executors of the estate of Margaret Agostini, seeking an order directing release of funds held by the Bank and Trust Company of Old York Road in three $5,000 certificates is granted, and the said bank is directed to release said funds to the aforesaid executors as monies belonging to the estate aforementioned.

Unless exceptions are filed hereto within ten (10) days of notice hereof, this decree shall become final as of course.