## Rodgers Estate

**532**

Before Klein, P. J., Bolger, Hunter, Lefever and Saylor, JJ.

*Louis F. McCabe* and *Francis X. McClanaghan,* for exceptants.

*W. LeRoy McKinley, James E. Gallagher, Jr.,* and *Gerald Ronon,* contra.

BOLGER, J., September 10, 1952.—Elizabeth M. Rodgers, 75 years of age, had resided for many years with her sister, Martha B. Rodgers, 92 years of age. On February 3, 1950, Elizabeth died. Her will was probated and letters testamentary granted on March 2, 1950, to John J. Mitchell, a member of the Philadelphia bar, who was also scrivener of the will. On February 27, 1950, upon petition of the nephews and nieces of Martha B. Rodgers, the Broad Street Trust Company was appointed guardian of the estate of Martha, upon her being adjudged a weak-minded person.

The executor, after qualifying, entered the home and found two account books of the Beneficial Saving Fund Society of Philadelphia, one entitled "Elizabeth M. Rodgers in trust for sister, Martha B. Rodgers". The second was a transferred account of the first, the amount presently on deposit being $34,356.30. He also found a similar deposit book entitled "Martha B. Rodgers in trust for Elizabeth M. Rodgers", which he delivered to the Broad Street Trust Company, guardian for Martha, the balance in which was $38,762.49.

Thereupon, the Broad Street Trust Company demanded payment of the account held in trust for their ward, Martha B. Rodgers. Upon refusal of the Beneficial Saving Fund Society to honor this request, the executor of the estate of Elizabeth M. Rodgers filed his petition on March 31, 1950, in this court for a citation directed to the Broad Street Trust Company and the Beneficial Saving Fund Society to show cause why the amount on deposit in the latter account should not be paid to him as executor. The saving fund society filed an answer submitting itself to the decree of the court. The Broad Street Trust Company, guardian for Martha, filed preliminary exceptions which were dismissed with leave to file an answer on the merits. Answer was duly filed and thereafter, upon petition of the executor, the court appointed Elias Magil, Esq., as master. Subsequently Martha Rodgers died and William Rodgers was appointed administrator c. t. a. of her estate.

After diligent inquiry and several hearings, the master filed a very comprehensive and scholarly report in which he sustained the prayer of the petition, finding and concluding that the deposit account in issue was a tentative trust which had been revoked by Elizabeth M. Rodgers by parol statements made by her in her lifetime as well as by her will. He dismissed exceptions to his report. Following argument on exceptions to this action of the master before the court en banc, the court being of opinion that the record disclosed the possibility that the bank accounts of both sisters might have been entered into in furtherance of a contract, sent the record back to the master to take further testimony and to make further report thereon. The master thereupon held further hearings at which he took tesimony following which he filed his report wherein he found that the testimony does not

support such a contract. He also dismissed exceptions to this report.

All parties agree with the conclusions of the master and the court concurs that the account in controversy was a tentative trust: Scanlon's Estate, 313 Pa. 424; Downey v. Duquesne Bank, 146 Pa. Superior Ct. 289; A. L. I. Restatement of the Law of Trusts §58; Matter of Totten, 179 N. Y. 112 (1904). However, the peculiarly intimate nature of the relationship between these two sisters forms the background upon which the findings and conclusions of the master must be judged.

Martha and Elizabeth had a third sister, Mary, who had lived with Martha and Elizabeth until her death in 1933. At Mary's death all three sisters had saving fund accounts in trust each for the two others; at the time of Mary's death the balance in her account was $19,203.09 which was transferred to the accounts of Elizabeth and Martha, whose accounts at the same time, but without augmentation of the shares they received from Mary were $20,033.25 and $27,730.70, respectively. The master, in tracing the accounts of Elizabeth and Martha thereafter, states that "they show more items of difference in dates and amounts than there are similarities". To illustrate, he states that during the calendar years 1934 to 1942 Martha drew $6,750 while Elizabeth withdrew only $4,750 and from 1943 to 1948, inclusive, Martha withdrew $3,500 in 10 withdrawals while Elizabeth withdrew $3,815 in 13 withdrawals. Of these latter 13 withdrawals by Elizabeth, only five accord in date and amount with withdrawals made by Martha. The master finds as a fact that there was no agreement between the sisters pertaining to the cross tentative trusts.

Other evidence of the community of interests between these two sisters is that the home in which they lived was in their joint names with right of survivorship; that they jointly owned a cottage at Cape May

Point, N. J.; a lot in Corbindale, Delaware County, Pa.; their bank account in the Pennsylvania Company was in their joint names. A small amount of stock was likewise held, and the strong box in their home, in which their savings books were found, was equally accessible to both of them and they had executed wills in favor of each other.

While the origin of the doctrine of tentative trusts is generally regarded as modern and its genesis is attributed to the case of Matter of Totten, 179 N. Y. 112, nevertheless we find that in Pennsylvania the creation of such trusts is of much earlier origin. In Smith's Estate, 144 Pa. 428, we find specific reference to English cases: Richards v. Delbridge, L. R. 18 Eq. 11-12; Ex parte Pye, 18 Ves. 140; Cruwys v. Colman, 9 Ves. 323, and to the Pennsylvania cases of Helfenstein's Estate, 77 Pa. 328; Appeal of Crawford, 61 Pa. 52; Appeal of Dickerson, 115 Pa. 198, as well as to Bispham's Eq. 78; Perry on Trusts, sections 96 and 98. Among the later Pennsylvania cases are Gaffney's Estate, 146 Pa. 49, and Merigan v. McGonigle, 205 Pa. 321. They are all authority for the proposition that the owner of personal property may impress upon it a valid present trust, either by a declaration that he holds the property in trust, or by a transfer of the legal title to a third party upon certain specified trusts. If he makes himself trustee, no transfer of the subject matter of the trust is necessary. However, it is emphasized that four things must concur to raise such a trust: Sufficient words to create it; a definite subject; a certain or ascertained object and that the terms of the trust should be sufficiently declared. The intention must be plainly manifest and not derived from loose and equivocal expressions of parties made at different times and upon different occasions; but any words which indicate with sufficient certainty a purpose to create a trust will be effective in so doing.

In re Totten, supra, established the law pertaining to the operation and revocation of tentative trusts.

In passing upon exceptant's contention that the trust was irrevocable because of an agreement between the the parties, we find it stated in A. L. I. Restatement of the Law of Trusts, §58, comment (a), that this intention may be: (1) To grant a revocable trust; (2) to grant an irrevocable trust, or (3) not to create a trust. Parol evidence is admissible to show what the depositor intended. Notice to the beneficiary is evidence of intention that the trust should be irrevocable whether given at the time of the deposit or subsequently. So also are delivery of the deposit book and oral statements by the depositor to third persons of his intention to create the trust.

It is admitted that the record is devoid of any direct evidence of agreement between the sisters and, therefore, any finding or conclusion of such agreement must be drawn from the circumstantial evidence, which is very strong in character. However, the only example of the manner in which such a trust was declared irrevocable in Pennsylvania is McGary Estate, 355 Pa. 232, wherein settlor delivered six pass books, all in trust for different individuals, to the beneficiaries thereof, accompanied by statements that the accounts were gifts or for payment of debts, the settlor having made no withdrawals subsequent to the deposits.

The leading case against exceptant's contention is Bearinger's Estate, 336 Pa. 253, following New York authorities, wherein it was held that delivery of the pass book of a tentative trust account is not sufficient to make the trust irrevocable without accompanying words of gift or a declaration that the depositor is thereby giving it to the beneficiary.

The fact that the sisters had cross wills concurrently executed would not make them irrevocable: Rhodes' Estate, 277 Pa. 450, and Dewees' Estate, 12

D. & C. 93. We must, therefore, conclude that notwithstanding the very strong circumstantial evidence, the record lacks the essential element pertaining to an agreement, viz., direct testimony of such agreement. Therefore, we must sustain the finding and conclusion of the master that the tentative trust in question was not entered into by agreement between the two sisters.

The testimony of the scrivener is that he visited settlor when she was a patient in St. Joseph's Hospital at a time when she was under treatment for a paralytic stroke which resulted in her death a few days later. He states that settlor told him that the greater part of her principal estate was in the Beneficial Saving Fund Society (the depository of the fund in dispute) and that her sister, beneficiary, was 92 years old and was mentally and physically weak, not having left the house for three years and that she could not take care of her affairs. The fact that the deposit in the Beneficial Saving Fund Society was in trust was not mentioned. She told the scrivener that she had no interest in her nephews or nieces or a grandnephew and that she wanted to provide for her sister in her will and upon being asked what should be done with the balance, if any, remaining at her sister's death, she stated that she wanted it to go to certain charities, a list of which she had drawn up and which list was in her home. The scrivener in drafting the will followed these instructions and provided in the will for a discretionary trust for life for testatrix's sister, Martha, the beneficiary of the tentative trust, with remainder to the charities named in the memorandum supposedly located in her home and further provided that should these charitable bequests be invalid, that the remainder should be paid to Dennis Cardinal Dougherty, Archbishop of Philadelphia, or his successor. No specific reference to the trust in question appears in the will.

The scrivener testified that following the death of testatrix, he went to her home where he searched for, but could not find the memorandum of charities to which testatrix had referred, but he did locate $490 in the place designated by testatrix before her death. The other assets in the testatrix's estate were the sum of $2,000 to which she was entitled under the will of Mary Mitton, deceased, and $557.76 being one half of the executor's commissions of the estate of Mary Mitton, deceased.

The master not only admitted this testimony over the objection of exceptant, but also concluded that it constituted a revocation of the trust.

In support of his exception to the admission of the scrivener's testimony, exceptant cites Merigan v. McGonigle, supra, wherein expressions of a settlor in conflict with the trust, made after the deposit, were excluded. The same ruling was made in Frankenfield's Estate, 29 D. & C. 188, on the ground that acceptance of such testimony opens the door to fraud. The chief difficulty of exceptant is that it does not recognize the clear distinction between an attempt to strike down a valid trust on the ground of fraud, accident or mistake in the establishment of the trust—to nullify the transaction ab initio—and an attempt to revoke a trust, the validity of which is unquestioned, but which is revocable in terms or by nature. The cited cases would require the exclusion of the scrivener's testimony on the first of these points, but they have no application respecting the admissibility of parol testimony in connection with an attempt to revoke a valid tentative trust.

Here the declarations were made by testatrix while performing one of the most important acts of her life, making her will. They were not uttered casually nor were they self-serving, but were spontaneous and natural and were made to the scrivener of her will, whose

credibility is admitted. Standing alone, without the will, they would not only be of no weight, but inadmissible. When connected with the preparation and execution of the will, they become part of the testamentary act. That is the essence of the res gestæ rule: Walsh v. Emigrant Savings Bank, 106 N. Y. Misc. 628.

In construing settlor's will, we have to put ourselves in her armchair: O'Reilly Estate, 371 Pa. 349. As far back as Postlethwaite's Appeal, 68 Pa. 477, Justice Sharswood said (p. 480) :

"It has been long and well settled, and indeed it is a principle so consonant to reason that the only wonder is that it should ever have been questioned, that all the surrounding circumstances of a testator—his family, the amount and character of his property—may and ought to be taken into consideration in giving a construction to the provisions of his will."

Since settlor could revoke her trust by will, we must know all her circumstances, in order to construe her will and, therefore, to determine this question. In looking at the will, we cannot construe it without reference to these attending circumstances, especially the nature of her estate and, therefore, to Mr. Mitchell's testimony of testatrix's declaration. Without this testimony, the will is meaningless respecting the source of her estate, but with it, testatrix's purpose becomes clear and the will effectual. The master's acceptance of the testimony of the scrivener is sustained.

There is no Pennsylvania case directly in point respecting the issue of revocation. In Pozzuto's Estate, 124 Pa. Superior Ct. 93, one of the main cases relied upon by exceptants, it was decided that a general residuary bequest does not revoke a tentative trust. The court said (p. 97) : "She should have unequivocally revoked the recently created trust."

In Scanlon's Estate, 313 Pa. 424, a trust was held revoked by will wherein testatrix expressly referred to the fund on deposit and provided for its distribution among her relatives.

In Krewson Estate, 154 Pa. Superior Ct. 509, settlor's oral declarations made to one other than the beneficiary were held not sufficiently clear and unambiguous to constitute a parol revocation of a trust. By way of dicta, the court said:

"If it was the purpose of the testatrix to revoke the trust she would have specifically and expressly said so in her will drawn by an attorney."

Turning to the New York cases, in Matter of Richardson, 134 N. Y. Misc. 174, the court stated that while general or residuary clauses in wills are not sufficient to revoke tentative trusts, yet wills containing specific legacies are sufficient evidence of revocation. There a lawyer scrivener was called to prepare settlor's will. In response to questions, testator stated that the only thing he had at that time were three personal bank accounts (including the deposit in question) which constituted his whole estate and he mentioned the names of the depository banks. The will left his entire estate to one other than the trust beneficiary and did not refer specifically to the bank accounts. The testimony of the scrivener was held admissible to show oral revocation of the trust in the course of instructions to draw the will and accordingly the court found a revocation. These declarations were held to be a decisive act or declaration of disaffirmance.

In Matter of Murray, 143 N. Y. Misc. 499, the existence of 11 specific legacies in settlor's will was declared to be sufficient to revoke the trust.

In Walsh v. Emigrant Industrial Savings Bank, 106 N. Y. Misc. 628, the court accepted as part of the res gestæ declarations of settlor made prior to the execution of her will and immediately thereafter to the ef-

fect that she did not want the beneficiary to have any of her money and declared that these declarations revoked the trust.

In Matter of Beagan, 112 N. Y. Misc. 292, partly relied upon by the master, the trustee executed a will wherein she provided a number of legacies in the aggregate amount approximating the sum on deposit. She showed the pass book to the scrivener and named each legatee in the amount he or she was to receive, checking the amount undisposed of after each gift. The legacies would not have been satisfied except for the fund in question. It was held that the will revoked the trust.

Here, neither the validity of the will nor the credibility of Mr. Mitchell's testimony has been attacked. Accepting the testimony of Mr. Mitchell, the scrivener, and connecting it with the will, we discover that testatrix's testamentary scheme was to draw into her estate the fund in the trust in issue and with it to provide a discretionary trust for her sister, Martha, the main object of testatrix's bounty as well as of the trust. It must, therefore, be said that the revocation of the trust was not in defiance of the purposes of the trust, but was a more intelligent and wholesome application of the res for the same object as the one for which the trust was originally created. This scheme cannot be carried out without the trust being revoked or at least modified in purpose and it is our opinion that the requirement for revocation, a decisive, clear and unequivocal act, is here presented. Not only is the act unequivocal, but it is subject to no other interpretation. While the will does not expressly refer to the trust, nor is there any reference to it specifically in settlor's declarations as testified to by Mr. Mitchell, yet the subject matter of it was stated by testatrix as constituting her principal asset. Under all these circumstances, we conclude that settlor revoked this trust

in the performance of the testamentary act of making her will.

The exceptions to the master's report are accordingly dismissed.