## Kuestner Estate

*Edward J. Gilson*, for accountant.

*Oliver J. McCarron*, for cestui que trust in accounts.

*Filindo B. Masino*, for Commonwealth.

JAMISON, *J.,* February 9, 1976—Raymond A. Kuestner died, intestate, on December 16, 1974. He was survived by his widow, Margaret, and two adult sons.

Letters of administration were granted to Margaret.Kuestner on January 6, 1975. Proof of publication thereof was submitted.

Payment of $1,253.41 on account of transfer inheritance tax on July 28, 1975, was evidenced by official receipt.

The family exemption of $2,000 was claimed by Margaret Kuestner, the surviving spouse, and payment is reflected in the account.

On January 3, 1975, the widow elected under section 6111 of the Probate, Estates and Fiduciaries Code of June 30, 1972, P. L. 508, as amended, 20 Pa. C.S. §6111, to take against all conveyances made by decedent during his lifetime. These included First Pennsylvania Bank Savings Account No. 54-01585-4 in the name of "Raymond J. Kuestner, in tr. for Miss Alice Lynch," and Girard Trust Bank Savings Account No. 09-024-3395,

"Raymond Kuestner in trust for Miss Alice Lynch, his friend."

On petition of the widow, filed February 7, 1975, a citation was issued to the two banks and to the beneficiary of the savings account trusts to show cause why they should not pay over one third of the proceeds of the accounts to Margaret Kuestner, for distribution to her as the surviving spouse of decedent.

By order of Shoyer, *J.*, determination of the widow's rights was deferred until after the filing of the administratrix' account, which was called for audit on September 16, 1975, and October 6, 1975. Although no testimony was offered at the hearing, the court, through inquiry of counsel, ascertained that the passbooks were among decedent's effects at the time of his death. An inspection of the passbooks revealed that the account in the Girard Trust Bank was opened in 1962 with a deposit of $15, and that there were numerous transactions throughout the years, including a withdrawal on April 5, 1974, of $800 and a deposit of $700 on October 7, 1974, leaving a final balance of $1,528.70. The First Pennsylvania Bank passbook discloses that on January 8, 1971, a balance of $6,280.78 was transferred from an old passbook. Five transactions were made, presumably by decedent, between that date and May 7, 1973, when there was a withdrawal of $1,100. At the time of the depositor's death, this account had a credit balance of $3,413.95.

Counsel for Miss Lynch urges that the purpose of section 6111 of the Probate, Estates and Fiduciaries Code is to protect a widow against any possible fraud on her marital rights. He contends that there was no attempt by this decedent to per-

petrate a fraud on the rights of his widow, and that there were sufficient funds in the probate estate to discharge both the statutory entitlement of the surviving spouse and the family exemption. He relies upon Restatement 2d, Trusts, §58, as authority for the proposition that there is an obligation on the part of the widow to take her intestate share from testamentary assets, rather than to "first grasp" the tentative trust. While conceding that this was a revocable inter vivos trust, subject to revocation by consumption, he argues that since decedent did not revoke the trust in his lifetime or make any testamentary dispositions thereof, a full estate in the beneficiary of the trust account was created at the settlor's death.

We are of the opinion that counsel's arguments are without merit and not consistent with Pennsylvania law. There can be no doubt that Pennsylvania recognizes the validity of savings account trusts, which are created by making a savings bank deposit in the name of the depositor as trustee for another: Scanlon's Estate, 313 Pa. 424, 427, 169 Atl. 106 (1933). Moreover, it is clear that section 6111 of the Probate, Estates and Fiduciaries Code, providing for the treatment of certain inter vivos conveyances as testamentary dispositions so far as the surviving spouse is concerned, includes bank account trusts. See Bregy, Intestate, Wills and Estates Acts of 1947, at 5859.

However, we can find no Pennsylvania appellate court cases or recent Pennsylvania Orphans' Court decisions precisely on point as to the amount of the spouse's share in tentative trusts. Further, there are disparities in the principles set forth in Restatement 2d, Trusts, the Uniform Probate Code, the Probate, Estates and Fiduciaries Code, and in

the statutes and case law of other jurisdictions. Therefore, the present status of Pennsylvania law with respect to bank account trusts will be more fully explored in this adjudication than might otherwise seem warranted.

Savings account trusts are frequently referred to in a generic sense as "Totten Trusts." These "poor men's wills" are essentially a judicial creation, that is, strictly speaking, neither a will nor a trust. In deference to the widespread practice of setting up savings account trusts, and finding no mandate for declaring the trusts irrevocable as a matter of law, the court, in the Matter of Totten, 179 N. Y. 112, 71 N. E. 748 (1904), introduced the novel concept of tentative trusts.[1] The depositor has complete control over the fund during his life. The prior death of the beneficiary extinguishes the trust (Collopy's Estate, 33 D. & C. 169 (1938); McWilliams' Estate, 38 D. & C. 93 (1940)), and the beneficiary has no real interest in the trust account until the depositor's death.

Bank account trusts have also been categorized as "revocable trusts." Implicit in this concept is that an interest is vested in the beneficiary at the time the deposit is made, subject to the power of revocation in the depositor: Kardon v. Willing, 20 F.

---

1. "A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the pass book or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act of declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor.": 179 N. Y. at 125-26, 71 N. E. at 752.

Supp. 471 (E.D. Pa., 1937). Each withdrawal is considered a pro tanto revocation.

Where the depositor has not, at the time of deposit or subsequently, manifested an intention that the trust be irrevocable (e.g., by delivery of the passbook (McGary Estate, 355 Pa. 232, 49 A.2d 350 (1946)), he can revoke it in whole or in part by withdrawal or by will. See Scanlon's Estate, supra; Pozzuto's Estate, 124 Pa. Superior Ct. 93, 188 Atl. 209 (1936).[2]

It is fairly obvious that savings account trusts are testamentary transfers and not trusts. However, recognizing their usefulness and convenience as a simple method for providing for disposition of deposits at death, the courts have devised a judicial fiction to circumvent the Statute of Wills.[3]

Under common-law principles, Pennsylvania courts have held that bank account trusts can be reached by electing spouses: Scanlon's Estate, supra; Black Estate, 73 D. & C. 86 (O.C. Del., 1950); Graham Estate, 3 D. & C. 2d 218 (O.C. Del., 1954).

While concluding that a surviving widow had expressly waived her rights in savings account trusts created by a decedent prior to the effective date of the Estates Act of 1947, by authorizations and releases to the bank, the Supreme Court in Iafolla Estate, 380 Pa. 391, 110 A.2d 380 (1955), "assum[ed] without deciding that two tentative trust

---

2. The revocable trust theory is preferred by Bogert (G. G. Bogert and G. T. Bogert, The Law of Trusts and Trustees, Note 40 at 47 (2d Ed., 1965)), and Restatement 2d, Trust §58 (1959).

3. Savings bank trust accounts have been supported in 19 jurisdictions and sanctioned by statute in New Jersey (N. J. Stat. Ann. §17:9a-216 (1963)). See Savings Account Trusts: A Critical Examination, 49 Notre Dame Lawyer 686 (1974).

accounts of the decedent were testamentary as to his surviving spouse, and, therefore, subject to her intestate interest in his estate," and rights under section 11 of the Estates Act of 1947.

Perhaps the most definitive analysis of the law of tentative trusts in Pennsylvania appears in the opinion by Shoyer, J., in Krasney Estate, 7 Fiduc. Rep. 403 (1957). On the authority of Restatement 2d, Trusts, §§57 and 58, the Pennsylvania and New York cases, by analogy to the claims of creditors, and, following the dictum of Iafolla Estate, supra, under section 11 of the Estates Act of 1947, the court found that a surviving spouse was entitled to her intestate share of a savings bank deposit. See also Williams Estate, 12 Fiduc. Rep. 284, 288 (1962).

In Krasney Estate and Williams Estate, where it was determined that the spouses were entitled to share in bank account trusts under the provisions of section 11 of the Estates Act and section 211 of the Fiduciaries Act of 1949 as amended,[4] the courts relied solely on the wording of the statute. The doctrine of "fraud on the marital rights" was not considered.

The suggestion of counsel for Miss Lynch that, in the absence of a showing of fraud, absolute title in the fund vests in the beneficiary is untenable. Proof of actual or constructive fraud need not be shown, nor is the donor's motive or intent when creating the bank account of any relevance. The surviving spouse may treat the transfer as testamentary, regardless of its purpose, when the transfer is within

---

4. Although the Estates Act of 1947 was repealed in 1972 by Title 20 Pa. C.S. Probate, Estates and Fiduciaries Code, the provisions of section 6111 of the code are virtually a reenactment of section 11 of the former statute, as amended.

the compass of the statutory specification that the assets are conveyed by one who "retains power of appointment by will or a power of revocation or consumption over the principal thereof." See comment by Bregy, Intestate, Wills and Estates Act of 1947, at 5861.

We now address the argument advanced by counsel for the beneficiary that the widow must first obtain her "fair" or statutory share from decedent's owned (probate) assets before she can claim against the bank account trusts. This position, suggested by the Second Restatement, has been accepted in New York and in other jurisdictions. It is not the law in Pennsylvania.[5]

Both Pennsylvania and New York recognize the validity of tentative trusts as set forth in section 58 of the Restatement 2d, Trusts. However, Pennsylvania law does not entirely conform to the Restatement, comment e.:

"e. . . . the surviving spouse of a person who makes a savings deposit upon a tentative trust can include the deposit in computing the share to which such surviving spouse is entitled.

"Although the amount which the surviving spouse is entitled to receive is measured by the sum of the decedent's owned assets and the amount of such deposits, the owned assests are to be first applied to the satisfaction of the claim of the surviving spouse."

The Pennsylvania Legislature has not adopted the view, that the trust is to be treated as part of the decedent's estate in calculating the surviving

---

5. For the reasons given in this opinion, the statement appearing in the 64 A.L.R. 3d 187 (1975), equating the New York and Pennsylvania statutes in computing the share of the Totten Trust to which the surviving spouse is entitled, is in error.

spouse's distributive share.[6] The statute does not require consideration of the "fair share" of the spouse or whether the general assets of the estate need be exhausted before the trust funds may be utilized to satisfy the spouse's statutory interest.

In contradistinction, the Pennsylvania Probate, Estates and Fiduciaries Code, sec. 6111(b), does not mandate inclusion of the elective share in the net estate. The statute provides:

"Determination of share.—The spouse may elect to take against any such conveyance and shall be entitled to one-third thereof if the conveyor is survived by more than one child . . . and in all other circumstances one-half thereof."

Accordingly, if the spouse elects to treat inter vivos conveyances as testamentary, his or her share in the inter vivos gifts are treated independently of the share to which he or she might be entitled under the will or in the intestate estate. Only the spouse may elect against the conveyance, and the rights of intestate heirs or beneficiaries of decedent's will are in no way affected by the spouse's election. See comment by Bregy, Wills and Estates Act of 1947, at 8137.

Judicial recognition that the spouse's statutory share in assets which are part of the estate is to be

---

6. Cf.: The Uniform Probate Code, §2-202(1), which closely parallels the Restatement and would include a Totten Trust as part of the "augmented estate" where the surviving spouse exercises a right of election. The code further provides in section 2-207(a):

"In the proceeding for an elective share, property which is part of the augmented estate which passes or has passed to the surviving spouse by testate or intestate succession or other means . . . is applied first to satisfy the elective share and to reduce the amount due from other recipients of portions of the augmented estate."

calculated separately from the share in inter vivos conveyances is found in Hershey Estate (No. 2), 11 Fiduc. Rep. 122, 127 (1960):

"[A] surviving spouse electing to take against the will under Section 8 of the Wills Act is limited to a definite share of 'the real and personal estate of the testator,' whereas a surviving spouse electing under Section 11 of the Estates Act is allowed a definite share thereof referring to the value of the conveyance, and without reference to his or her share of the estate of the decedent."

Accordingly, it is of no consequence whether there are sufficient funds in the remaining estate to pay the spouse's statutory share. We need not consider questions of allocation and abatement of a combined fund when a surviving spouse elects under section 2508 of the Probate, Estates and Fiduciaries Code to take against a will. Legacies abate according to section 3541 of the code, irrespective of the share the spouse may receive pursuant to a mandated concurrent election under section 6111 against inter vivos conveyances. In the case of intestacy, there need be no concern with ratable abatement. Pursuant to section 2102 of the Probate, Estates and Fiduciaries Code, the widow or widower is entitled to one third or one half of the estate, as the case may be. By electing to take under section 6111, a spouse may take the same share of the property conveyed, over which the power of consumption or revocation was retained, as he or she would in the estate. Consequently, in this case, the widow's intestate share would be one third of the value of the bank account trusts in addition to one third of the net probate assets held by the administratrix.

The funds in Girard Trust Savings Account No.

09-024-3395 and in First Pennsylvania Account No. 54-01585-4, along with the accrued interest in each, are hereby ordered distributed, subject to such inheritance tax as may be found to be due, one third to Margaret Kuestner and two thirds to Alice Lynch.

There were no objections to the account which shows a balance of principal of $19,472.19, which, composed as stated in the account, together with an additional debit of $34.05, shown on counsel's appearance slip, and together with income received since the filing thereof, if any, and subject to such additional inheritance tax as may be due, is awarded in equal one-third shares to Margaret A. Kuestner, Vincent D. Kuestner, and Francis F. Kuestner, the next of kin of decedent.

Leave is hereby granted the accountant to make all necessary transfers and assignments.

And now, February 9, 1976, the account is confirmed nisi.