J-S26026-15

2015 PA Super 180

| IN RE: ESTATE OF HAROLD E. ROOD, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: THE ESTATE OF HAROLD ROOD, BY AND THROUGH DAVID ROOD, IN HIS CAPACITY AS EXECUTOR OF THE ESTATE OF HAROLD ROOD AND IN HIS CAPACITY AS BENEFICIARY, AND JANE ELIZABETH LANTZ, BENEFICIARY | |
| | No. 1648 MDA 2014 |

Appeal from the Order Entered on September 4, 2014
In the Court of Common Pleas of Berks County
Orphans' court at No.: 06-13-1705

BEFORE: OTT, J., WECHT, J., and JENKINS, J.

OPINION BY WECHT, J.:                                   **FILED AUGUST 28, 2015**

The Estate of Harold Rood, David Rood, and Jane Elizabeth Lantz (respectively, "the Estate," "Rood," and "Lantz"; collectively, "Appellants") appeal the orphans' court's September 4, 2014 order, which determined that two "payable on death" Vanguard investment accounts ("the Accounts") opened by Harold Rood ("Decedent"), which named Rood and Lantz as beneficiaries of the Accounts upon Decedent's death, were subject to the spousal election of Hope Rood, Decedent's wife ("Wife"), pursuant to 20 Pa.C.S. § 2203. Appellants contend that the orphans' court erred in determining that Wife, who was bequeathed nothing in Decedent's will, could

claim one third of the Accounts' proceeds under section 2203. Albeit for different reasons than those set forth by the orphans' court, we affirm.[1]

The orphans' court provided the following concise factual background, which is sufficient to contextualize this question of first impression:

> Decedent died testate on December 8, 2013. At the time of his death, Decedent had been married to Wife for almost 27 years. He had two children from a previous marriage, Rood and Lantz. Decedent's Last Will and Testament (hereinafter the "Will") named Rood as executor and devised one half of the Estate to Rood and the other half to Lantz. Although Decedent's Will acknowledged Wife . . ., she was left nothing from the Estate.
>
> Letters Testamentary were granted to Rood in his capacity as Executor on December 18, 2013[,] and notice was served upon Lantz and Wife. On December 27, 2013, Wife timely filed to claim her elective share of the Estate. The orphans' court is not aware of the existence of any prenuptial or postnuptial agreements [that] would preclude Wife's claim and her ability to claim against the Estate is not in dispute.
>
> The dispute between Wife and the Estate centers on the Accounts[, which were] owned by Decedent[,] naming Rood and Lantz as beneficiaries. A hearing was held before the orphans' court on September 3rd with memorandums of law filed by both parties. On September 4th the orphans' court issued an order finding that the Accounts are subject to spousal election. [A] notice of appeal was filed by Appellants on September 25th and a [concise] [s]tatement of [m]atters [c]omplained of [on appeal pursuant to Pa.R.A.P. 1925(b)] was received on October 17th.[2]

_____

[1] We may uphold a court of common pleas' decision if there is "any proper basis for the result reached," even if different than the basis relied upon by the common pleas court. **_In re Adoption of R.J.S._**, 889 A.2d 92, 98 (Pa. Super. 2005).

[2] The orphans' court had directed Appellants to file a concise statement pursuant to Rule 1925(b) by order entered on September 30, 2014.

Orphans' court Opinion ("O.C.O."), 11/5/2014, at 1-2 (nomenclature modified for clarity).

Appellants raise the following three issues:

1.    Whether the orphans' court erred as a matter of law in determining that Wife is entitled to exercise her spousal election against Decedent's Accounts[,] under which Rood and Lantz are the named beneficiaries upon Decedent's death.

2.    Whether the orphans' court erred as a matter of law in determining that an *inter vivos* interest was conveyed by Decedent in the Accounts given that Decedent designated Rood and Lantz as beneficiaries to receive the Accounts upon his death.

3.    Whether the orphans' court erred as a matter of law in determining that a testamentary interest was conveyed by Decedent in the Accounts given that Decedent designated Rood and Lantz as beneficiaries to receive the Accounts upon his death.

Brief for Appellants at 5 (nomenclature modified).   However, because the latter two issues are encompassed by the first, our discussion is addressed solely to the first issue and touches upon the others only to the extent necessary to complete our analysis.

The pertinent facts are undisputed.   The matter at hand involves a pure question of law requiring us to interpret provisions of the Probate, Estates, and Fiduciaries Code (the "PEF Code" or the "Code"),[3] and in particular the section governing spousal elections, 20 Pa.C.S. § 2203.   Thus, we review the orphans' court's legal conclusions *de novo* and the scope of

---

[3]    20 Pa.C.S. §§ 101, *et seq*.

our review is plenary. ***Bowling v. Office of Open Records***, 75 A.3d 453, 466 (Pa. 2013); ***In re D.L.H.***, 2 A.3d 505, 513 (Pa. 2010).

At issue in this case is whether the scope of Wife's right of election with regard to the Estate encompasses the Accounts, a matter governed by the Code. This case calls upon us to interpret a statute, which we do pursuant to the following time-honored rules and principles:

> As with all questions of statutory interpretation, our object is to ascertain and effectuate the intention of the General Assembly, giving effect, if possible, to all provisions of the statute under review. 1 Pa.C.S. § 1921(a). Generally, the best indication of legislative intent is the statute's plain language. ***Malt Beverages Distributors Ass'n v. Penna. Liquor Control Bd.***, 974 A.2d 1144, 1149 (Pa. 2009). Further, the plain language of each section of a statute must be read in conjunction with one another, construed with reference to the entire statute. ***E.D.B. v. Clair***, 987 A.2d 681, 684 (Pa. 2009) (internal citations omitted). We presume that the General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable, and that the General Assembly intends the entire statute to be effective and certain. 1 Pa.C.S. §§ 922(1), (2).
>
> When words of a statute are not explicit, but ambiguous, a reviewing court looks to other principles of statutory construction, among them: the occasion and necessity for the statute; the circumstances under which the statute was enacted; the mischief to be remedied; the object to be attained; the consequences of a particular interpretation; and the legislative and administrative interpretations of such statute. 1 Pa.C.S. § 1921(c).

***Bowling***, 75 A.3d at 466 (citations modified); ***see D.L.H.***, 2 A.3d at 513-14. Furthermore, "[w]hile it is true that the views expressed by those who draft or enact laws are not a safe guide when the courts are called upon to determine the meaning of the words employed therein . . ., yet, in order to

get at the old law, the mischief and the remedy, and properly to understand and construe a statute embodying the latter, the history of the enactment in question may always be considered." *In re Tarlo's Estate*, 172 A. 139, 140 (Pa. 1934), *abrogated on other grounds by* *In re Estate of Klein's*, 378 A.2d 1182 (Pa. 1977); *cf. In re Henderson's Estate*, 149 A.2d 892, 897 (Pa. 1959) ("[I]n ascertaining the legislative meaning, . . . the report of a legislative commission or a Senate or House committee may, if obscurity or ambiguity exists, be considered.").

Specifically at issue, albeit as informed by other provisions, is section 2203, which provides, in relevant part:

**§ 2203.  Right of election; resident decedent**

**(a)  Property subject to election.—**Except as provided in subsection (c), when a married person domiciled in this Commonwealth dies, his surviving spouse has a right to an elective share of one-third of the following property:

\* \* \* \*

(3)     Property conveyed by the decedent during his lifetime to the extent that the decedent at the time of his death had a power to revoke the conveyance or to consume, invade or dispose of the principal for his benefit.

\* \* \* \*

In construing this subsection, a power in the decedent to withdraw income or principal, or a power in any person whose interest is not adverse to the decedent to distribute to or use for the benefit of the decedent any income or principal, shall be deemed to be a power in the decedent to withdraw so much of the income or principal as is subject to such power, even though such income or principal may be distributed only for support or other particular purpose or only in limited periodic amounts.

**(b) Property not subject to election.**—The provisions of subsection (a) shall not be construed to include any of the following except to the extent that they pass as part of the decedent's estate to his personal representative, heirs, legatees or devisees:

(1)   Any conveyance made with the express consent or joinder of the surviving spouse.

(2)   The proceeds of insurance, including accidental death benefits, on the life of the decedent.

(3)   Interests under any broad-based nondiscriminatory pension, profit sharing, stock bonus, deferred compensation, disability, death benefit or other such plan established by an employer for the benefit of its employees and their beneficiaries.

20 Pa.C.S. § 2203.

Insofar as it illuminates the General Assembly's intent in enacting section 2203 in its current form, the committee commentary also warrants reproduction:

In one respect, the class of property subject to election is narrower than in present Pennsylvania law. It is intended that the spouse should have a right of election only with respect to assets which the decedent retained the right or power to enjoy during his lifetime. This should not include property which the decedent has given away absolutely and cannot recapture for his own benefit, even though he has retained a power of appointment which cannot be exercised in his favor during his life.

* * * *

In other respects the property subject to the spouse's election is broadened by the proposed provisions, as follows:

* * * *

(3)   Revocable transfers. This conforms with present Pennsylvania law.

\* \* \* \*

The final provision in the subsection, equating beneficial powers to beneficial interests, is found neither in the Uniform Code nor present Pennsylvania law. It will make certain transfer[s] subject to the spouse's election which under present law might offer an easy escape from the rights of the surviving spouse, *e.g.*, discretionary trusts where a disinterested trustee has the power to make payments to the decedent or where the decedent had the right to withdraw a certain percentage of the principal each year.

20 Pa.C.S. § 2203 Jt. St. Govt. Comm. Cmt.—1978

The orphans' court determined that the Accounts were subject to Wife's section 2203 right of election because it found that they were in the nature of a **Totten** or tentative trust:[4]

A tentative trust is created when a person makes a deposit in a bank or other savings organization[5] in his own name as trustee for another person intending to reserve a power to withdraw the whole or any part during his lifetime and is enforceable by the beneficiary upon the death of the depositor. **In re Estate of**

_____

[4] The name is drawn from **In re Totten**, 17 Bedell 112 (N.Y. 1904), the New York Court of Appeals decision widely credited with first conceiving the notion of a tentative trust. However, In **In re Rodgers' Estate**, 80 Pa. D. & C. 531 (Phila. Cty. 1952), the orphans' court found the doctrine's application in a number of English and Pennsylvania cases that preceded **Totten**. **Rodgers' Estate**, 80 Pa. D. & C. at 535.

[5] Indeed, some cases suggest that it is **strictly** savings accounts of the passbook variety that are designated in trust that may be treated as tentative trusts. However, in **In re Agostini's Estate**, 457 A.2d 861 (Pa. Super. 1983), we noted that two 1976 amendments to the Code "enlarged the 'trust account' to include: 'a checking account, savings account, certificate of deposit, share account and other like arrangements.'" **Id.** at 873 (quoting 20 Pa.C.S. § 6301). Self-evidently, if this expanded, or recognized an expansion in, the range of accounts subject to the **Totten** trust designation, it did so only incrementally.

*Inter*, 664 A.2d 142, 146 (Pa. Super. 1995). These trusts are frequently referred to as "*Totten* Trusts"[] and are essentially a "poor man's will[,"] a judicial creation that strictly speaking is neither a will nor a trust but are "fairly obviously testamentary transfers." *Kuestner Estate*, 72 Pa. D. & C.2d 372 (Phila. Cty. 1976). Tentative trusts often have the effect of precluding a surviving spouse's right to inherit the deceased spouse's estate. *Inter*, *supra*. This goes against the spirit of the [PEF Code,] which seeks to prevent a spouse from transferring money into an account which they can enjoy during their lifetime but at death disinherits the surviving spouse. It is settled law in the Commonwealth that spouses can reach these tentative trusts through their elective share. *Kuestner*, *supra*; *see also Inter*, *supra* (to conclude a surviving spouse could not elect against a tentative trust would contradict the legislature's intent in recodifying section 2203).

In this case, [Decedent] owned various Vanguard accounts which by 20 Pa.C.S. § 6409(a)[6] are not testamentary[,] but the decedent during his lifetime enjoyed full control over the [A]ccount[s] with the balance designated for his children upon his death. This fits squarely with 20 Pa.C.S. § 2203(a)(3)[,] which allows "property conveyed by the decedent during his lifetime to the extent that the decedent at the time of his death had a power to revoke the conveyance or consume, invade or dispose of the principal for his own benefit[,]" to be subject to elective share. The conveyance can be an act which intends the transfer to have either *inter vivos* or testamentary operation. 20 Pa.C.S. § 2201[7]. During his lifetime, [Decedent] clearly had the ability to consume, invade or dispose of the contents of his Vanguard accounts[,] and his opening of the [Accounts] and designation of [Rood and Lantz] as beneficiaries acted as a conveyance for the purpose of creating an interest as they would

_____

[6]    Section 6409(a) provides that "[a] transfer on death resulting from a registration in beneficiary form is effective by reason of the contract regarding the registration between the owner and the registering entity and this chapter and is not testamentary." 20 Pa.C.S. § 6409(a).

[7]    Section 2201 defines a "conveyance" as "an act by which it is intended to create an interest in real or personal property whether the act is intended to have *inter vivos* or testamentary operation." 20 Pa.C.S. § 2201.

receive the money only after his death. Therefore, [the Accounts] are reachable by his spouse's elective share under 20 Pa.C.S. § 2203(a)(3).

O.C.O. at 3-4 (citations modified). In effect, the orphans' court, in analogizing the Accounts with a *Totten* trust, reduced the application of subsection 2203(a)(3) to a question of whether the assets in question were unrestrainedly revocable by the decedent up to the moment his life ended. Thus, although investment vehicles such as the Accounts here at issue are not expressly mentioned by the Code as being subject to (or excluded from) election, the orphans' court concluded that their practical characteristics render them so by implication.

Our opinion in *Inter* provides insight into the history of the interaction between the tentative trust doctrine and Pennsylvania's doctrine of spousal election, the nature of which has not changed significantly through at least three incarnations of the PEF Code's provisions governing same. Ultimately, we disagree with the orphans' court that recognizing the existence of a *Totten* trust in this case is either appropriate or necessary. However, *Inter* provides the most thorough account of the history and evolution of Pennsylvania's statutory spousal election of any discussion in Pennsylvania case law. Although in *Inter* we considered a *Totten* trust, we review that case at length for what it has to say about spousal election generally:

> The theory of tentative trusts was "enunciated in an effort to retain for the depositor complete control of the fund during his life and yet secure to the beneficiary any balance . . . at the death of the depositor." *Scanlon's Estate*, 169 A. 106, 108 (Pa. 1933). A tentative trust is revocable by the (depositor)

prior to his death by "any clear manifestation of an intention to do so." *In re Estate of Stevenson*, 648 A.2d 559, 561 (Pa. Super. 1994) (quoting *Estate of Vittorio*, 434 A.2d 777, 779 (Pa. Super. 1981)). Tentative trusts do not constitute part of a decedent's estate; rather, the funds pass directly to the named beneficiary. *In re McFetridge's Estate*, 372 A.2d 823 (Pa. 1977).

A tentative trust often had the effect of precluding a surviving spouse's right to inherit the deceased spouse's estate. The depositor of the tentative trust retained control of the assets during his lifetime and subsequently was able to leave the money to a third party. *In re Schwartz' Estate*, 295 A.2d 600 (Pa. 1972). The obvious philosophy of Section 11 of the Estates Act of 1947 is to prevent a husband from indirectly disinheriting his wife through an *inter vivos* transfer while retaining control over the use and enjoyment of the property during his lifetime. *Montague Estate*, 170 A.2d 103 (Pa. 1961). Accordingly, 20 P.S. § 301.11 and its successor 20 Pa.C.S. § 6111 were enacted to ensure that the surviving spouse would not be disinherited through a tentative trust. Section 6111 reads as follows:

> **(a)** **In general—**A conveyance of assets by a person who retains a power of appointment by will, or a power of revocation or consumption over the principal thereof, shall, at the election of his surviving spouse, be treated as a testamentary disposition so far as the surviving spouse is concerned to the extent to which the power has been reserved, but the right of the surviving spouse shall be subject to the rights of any income beneficiary whose interest in income becomes vested in enjoyment prior to the death of the conveyor. . . .

> \* \* \* \*

Because 20 P.S. § 301.11 and its recodification as 20 Pa.C.S. § 6111 were enacted to prevent a spouse from defrauding the surviving spouse of his or her marital rights and to confirm a long existing public policy of Pennsylvania to protect a surviving spouse's rights, . . . a surviving spouse had the right to elect against a tentative trust. *Kuestner*, 72 Pa. D. & C.2d 372.

In 1978, however, 20 Pa.C.S. § 6111 was repealed and 20 Pa.C.S. § 2203 was enacted. Chapter 22 pertains to the

elective rights of a surviving spouse and reads in pertinent part as follows:

> **(a)      Property subject to election.—**When a married person domiciled in this Commonwealth dies, his surviving spouse has a right to an elective share of one-third of the following property:
>
> [* * * *]
>
> (3)      *Property conveyed by the decedent during his lifetime to the extent that the decedent at the time of his death had a power to revoke the conveyance or to consume, invade or dispose of the principal for his own benefit.*

20 Pa.C.S. § 2203 (emphasis added).

* * * *

> The official comment . . . indicates that the changes implemented by Chapter 22 were primarily intended to broaden the property subject to a surviving spouse's election.  Therefore, although the legislature repealed 20 Pa.C.S. § 6111, the law pertaining to tentative trusts and spousal election was not altered in any significant way . . . .  This is supported by the official comment to 20 Pa.C.S. § 2203[,] which states that [subsection 2203(a)(3)] pertains to revocable transfers and was intended to conform with current Pennsylvania law.  Thus, to conclude that a surviving spouse could not elect against a tentative trust would contradict the legislature's intent.

*Inter*, 664 A.2d at 145-48 (citations modified).

The orphans' court summarily equated the instant Accounts to a **Totten** trust, and, as such, deemed them subject to spousal election under subsection 2203(a)(3), in conformity with **Inter**:  The Accounts were "so similar in character to and operation of [*sic*] a tentative trust that existing jurisprudence already provides clear guidance that the [Accounts] are subject to spousal election."  O.C.O. at 3.  Wife seeks to reinforce this

policy-driven reasoning by speculating as to the evolution of personal financial planning that animated the General Assembly's decision to broaden the definition of property subject to election under section 2203:

> Historically, during time periods when interest rates offered on bank accounts were favorable, individuals would create "in trust for" accounts as an efficient way to establish a "payable on death" account which could accumulate steady growth. In today's market, where the interest rates offered on bank accounts are minimal at best, individuals now use other avenues to create "payable on death" accounts which have the potential for growth. The most common and closest option to the "in trust for" account is a mutual fund investment account like . . . the Accounts. The Accounts are the modern version of the traditional "in trust for" account at a bank, and individuals are able to achieve many of the same objectives that they were able to achieve in creating "in trust for" accounts at a bank. The only real difference is that the Accounts lack the words "in trust for." In all other respects, the accounts are almost identical in character and operation. These similarities just further illustrate why the Accounts are properly categorized as . . . tentative trusts.

Brief for Wife at 12-13.

Notably, neither the orphans' court nor Wife cites a case that has expanded the **Totten** trust doctrine beyond savings accounts or their close equivalents, or one that has recognized a **Totten** trust in the absence of "in trust for" language, **see** *supra* n.8, a step we are loath to take given that neither our Supreme Court nor our General Assembly has seen fit to do so during a century of preserving the limited scope of such trusts. However, we find that the plain language of the statute encompasses the Accounts without the imposition of a **Totten** trust.

We begin our analysis with the text of subsection 2203(a)(3). That subsection identifies "property conveyed by the decedent during his lifetime" as subject to spousal election. No party suggests that the assets placed in the Accounts were not "property." Accordingly, it is the meaning of "conveyed" that we must interpret in determining whether subsection 2203(a)(3) encompasses the Accounts.

Section 2201 defines a "conveyance" as "an act by which it is intended to create an interest in real or personal property whether the act is intended to have *inter vivos* or testamentary operation." 20 Pa.C.S. § 2201. It is beyond dispute that no *inter vivos* transfer to Rood and Lantz was effectuated by way of the Accounts, because being named in a revocable, payable on death registration creates only an expectancy under the instrument, not a vested interest. ***Cf. McFetridge's***, 372 A.2d at 825 ("Prior to decedent's death, appellee had a mere expectancy in the savings accounts since decedent could revoke the [***Totten***] trusts at will during his lifetime."). Thus, we must assess the meaning of "testamentary operation." Appellants would have us narrowly construe "testamentary operation" based upon subsection 6409(a) of the Code, which provides that "[a] transfer on death resulting from a registration in beneficiary form is effective by reason of the contract regarding the registration between the owner and the

registering entity and this chapter and **is not testamentary**." 20 Pa.C.S. § 6409(a) (emphasis added).[8]

Although no Pennsylvania case has analyzed the interplay of these provisions at length, or addressed them in the context of subsection 2203(a)(3), we find preliminary guidance in our decision in **In re Estate of Hart**. At issue in **Hart** was a widow's entitlement to take an elective share of real property that was held by the decedent with his son as joint tenants with rights of survivorship. 801 A.2d 599, 600 (Pa. Super. 2002). The orphans' court found that the widow was entitled to her statutory elective share of the property under subsections 2203(a)(3) or (4).[9] The appellant joint tenant disagreed, and argued that a literal reading of section 2203 precluded the widow's claim because, while that provision refers only to property conveyed **by** the decedent, the property at issue in that case was property conveyed by a third party **to** the decedent and his son. The trial court, however, had found that "the 'conveyance' against

---

[8]  It is undisputed that the Accounts' posthumous disposition was putatively governed by a registration of beneficiary form under the Act. **See generally** 20 Pa.C.S. §§ 6401-13.

[9]  Subsection 2203(a)(4) identifies "[p]roperty conveyed by the decedent during the marriage to himself and another or others with right of survivorship" as subject to election "to the extent of any interest in the property that the decedent had the power at the time of his death unilaterally to convey absolutely or in fee."

which elections are effective was the transfer of full title of the hunting farm by operation of law upon the death of the decedent." 801 A.2d at 601.

This Court began by consulting section 2201's definition of "conveyance" and the official comment to section 2203 pertaining to joint property, which noted that subsection 2203(a)(4) "conforms with present Pennsylvania case law which allows the spouse to take against property held jointly by decedent and another on the theory that the decedent had the power to revoke the conveyance as to his one-half or other fractional share by unilaterally changing it to a tenancy in common." 801 A.2d at 601.

We then reviewed our Supreme Court's earlier decision in **Estate of William Kotz**, 406 A.2d 524 (Pa. 1979). In that case, which concerned real estate held jointly with rights of survivorship by the decedent and his sister that had been purchased **before** the decedent and the widow had married, our Supreme Court interpreted section 2203's predecessor, 20 Pa.C.S. § 6111. Section 6111 provided, in relevant part, that "[a] conveyance of assets by a person who retains a power of . . . revocation or consumption over the principal thereof, shall, at the election of his surviving spouse, be treated as a testamentary disposition so far as the surviving spouse is concerned." **Kotz**, 406 A.2d at 529 (citing 20 Pa.C.S. § 6111 (repealed)). The **Kotz** Court consulted the Code's definitional section concerning the definition of conveyance, then found at 20 Pa.C.S. § 6101, which provided materially the same definition as is now provided by section 2101. The Court concluded that "a joint tenancy with a right of survivorship was to be

treated as a 'conveyance.'" **Hart**, 801 A.2d at 601 (citing **Kotz**, 406 A.2d at 529). Furthermore, "[t]he [**Kotz**] Court stated that the purchase of the property by the decedent and his sister was an 'act which created an interest in real property' and that the decedent retained '. . . a power of revocation or consumption over the principal.'" **Id.** at 601-02 (quoting **Kotz**, 406 A.2d at 529).

We also observed that the **Kotz** Court further based its broad construction of "conveyance" upon the legislative intent behind the statute, finding that "the obvious philosophy of Section [6111] . . . is to prevent a husband from indirectly disinheriting his wife through an *inter vivos* transfer while retaining control over the use and enjoyment of the property during his lifetime." **Hart**, 801 A.2d at 602 (quoting **Kotz**, 406 A.2d at 530). The **Kotz** Court ultimately ruled that the widow could **not** elect against the joint property there at issue, because it had not been acquired (or "conveyed") during her marriage to the decedent, as expressly required by subsection 2203(a)(4). **See** 406 A.2d at 531.

Informed by **Kotz**, and noting that the property at issue in **Hart** had been "conveyed" after the inception of the widow's marriage to the decedent, this Court in **Hart** reasoned as follows:

> The purpose of [section] 2203 . . . is to protect spouses from being denied a share of their deceased spouses' estates. Section 2203 affords that protection by treating assets that the decedent was able to dispose of or enjoy during marriage the same as property that was titled under the decedent's name alone. Therefore, both types of conveyances should be subject to the elective right. As the **Kotz** Court stated, "[t]o effectuate that

purpose, the legislature permits the surviving spouse to treat as testamentary any property which the other spouse by act 'intended to create in interest in real or other personal property.'" **Kotz**, 406 A.2d at 531.

It is also clear from the official comment to [section] 2203 that **Kotz**'s language considering a joint tenancy to be a conveyance was to be incorporated, and followed, in the application of [section] 2203. A joint tenancy between a deceased spouse and a third party is therefore a "conveyance" for purposes of a surviving spouse's right to elect against that property. At the time of his death, [the decedent] had the power to revoke, consume, invade or dispose of the principal for his own benefit. This power, therefore, subjected his interest in the hunting farm to [the widow's] election after his death.

**Hart**, 801 A.2d at 602 (citation modified).

While the instant case does not concern a joint tenancy, we find it illuminating that this Court in **Hart** interpreted conveyance far more broadly than the definition pressed upon us by Appellants in this case. Furthermore, both **Kotz** and **Hart** underscored the General Assembly's overarching intent to protect spouses from inequitable disinheritance by their decedent spouses' estates. In so doing, those decisions depended in substantial part upon section 2203's focus upon the decedent's freedom during his life to revoke the property arrangement in question, or to use and enjoy the principal, which is equally implicated in the matter *sub judice*.

Although these cases militate in favor of affirmance in the instant matter, we find it prudent to further examine the language of the relevant provisions of the Code, to ensure that, *vis-à-vis* subsection 2203(a)(3), a ruling in harmony with **Kotz** and **Hart** would not contradict the statute's plain language, which we are obligated to honor to the extent possible.

Appellants' reliance upon subsection 6409(a)'s indication that payable on death accounts are not "testamentary"[10] must be construed in tandem with section 2201's indication that "conveyance" refers to "an act by which it is intended to create an interest in real or personal property" if it is intended to have "testamentary operation," because it is not at all clear that the usages are intended to be interchangeable. "Testamentary," *simpliciter*, is defined by one authority as "[o]f or relating to a will or testament," and, alternatively, "provided for," "appointed by," or "created by a will." Black's Law Dictionary 1484 (Deluxe 7th ed. 1999). Because a section 2201 "conveyance" may refer to something outside the will of a given testator, an inference justified by conveyance's usage in subsection 2203, which governs a decedent's nonprobate property, then "testamentary **operation**" must refer to something that **behaves** like a will but is not, itself, part or parcel of a will. Consequently, if we are to give full effect to the language used by the General Assembly, informed by the assumption that it did not intend to

_____

[10] It is clear that subsection 6409(a) applies in the instant matter. The Vanguard account is a "security account" as defined by 20 Pa.C.S. § 6401 ("Definitions"), which includes "a securities account with a financial institution." A "security" is "[a] share, participation or other interest in property, in a business or in an obligation of an enterprise or other issuer. The term also includes a certified security, an uncertified security, and a security account." *Id.* A "beneficiary form" is "[a] registration of a security which indicates the present owner of the security and the intention of the owner regarding the person who will become the owner of the security upon the death of the owner." *Id.* Neither party contests generally the applicability of section 6409 in this case.

employ an irregular definition of "testamentary," then section 6409 only means that, as a matter of law, a transfer intended by a registration in beneficiary form does not, itself, constitute a will.

There also is an important caveat built into section 6409. Therein, the legislature provided that "[t]his chapter," *i.e.*, Chapter 64 ("Transfer on Death Security Registration"), "does not limit the rights of creditors or security owners against **beneficiaries and other transferees under other laws of this Commonwealth**." 20 Pa.C.S. § 6409(b). This at least suggests that section 6409 was not intended to interfere with spousal elections. That suggestion is reinforced by section 6409's commentary, which explains that "[t]his section is comparable to Section 214." 20 Pa.C.S. § 6409 Uniform Law Cmt. The reference is to Uniform Probate Code § 2-214, which provides as follows:

> **§ 2-214.  Protection of Payors and Other Third Parties**
>
> (a)  Although under Section 2-205 a payment, item of property, or other benefit is included in the decedent's nonprobate transfers to others, a payor or other third party is not liable for having made a payment or transferred an item of property or other benefit to a beneficiary designated in a governing instrument, or for having taken any other action in good faith reliance on the validity of a governing instrument, upon request and satisfactory proof of the decedent's death, **before the payor or other third party received written notice from a surviving spouse or spouse's representative of an intention to file a petition for the elective share or that a petition for the elective share has been filed.  A payor or other third party is liable for payments made or other actions taken after the payor or other third party received written notice of an intention to file a petition for**

> **the elective share or that a petition for the elective share has been filed.**

Uniform Probate Code § 2-214 (emphasis added); ***see id.*** § 2-214(b) ("If no petition is filed in the court within the specified time . . . or, if filed, the demand for an elective share is withdrawn . . ., the court shall order disbursement to the designated beneficiary.").

Viewed in tandem with section 2-214, it becomes clear that PEF Code section 6409's principal concern, like Uniform Probate Code section 2-214, is to protect third parties responsible at a decedent's time of death for "non-probate" assets, such as the Accounts in this case, from harm in the event of a good-faith transfer of an asset that is subject to a spousal election of which the third party is not aware. Thus, subsection 6409(b)'s caveat that it "does not limit the rights of creditors of security owners against beneficiaries and other transferees under other laws of this Commonwealth" might fairly be construed to encompass spousal elections. Furthermore, additional commentary notes approvingly another provision that "makes the decedent's **nonprobate transferees liable for statutory allowances and allowed claims against the decedent's estate** to the extent the decedent's probate estate is inadequate." 20 Pa.C.S. § 6409 Uniform Law Cmt. (emphasis added). In short, nothing suggests that section 6409's use of "is not testamentary" in reference to payable on death accounts was intended to compromise the meaning of section 2201's indication that a transfer intended to have "testamentary operation" is a "conveyance" under the

Code.  To the contrary, the commentary to section 6409, and specifically its reference to section 2-214 of the uniform code, indicates that the legislature anticipated that at least some payable on death accounts **would** be subject to spousal election.

Informed by the broader statutory context, we return to subsection 2203(a)(3), which provides that spousal election is available against "[p]roperty conveyed by the decedent during his lifetime to the extent that the decedent at the time of his death had a power to revoke the conveyance or to consume, invade or dispose of the principal for his benefit."  As noted, *supra*, the only sticking point on whether this encompassed the Accounts was whether they comprised property that was "conveyed."

We find that, in designating Rood and Lantz as payable on death beneficiaries of the Accounts, Decedent "conveyed" the Accounts insofar as he sought to create an interest in real or personal property that would have "testamentary operation."  **See** 20 Pa.C.S. 2201.  Furthermore, he retained the "power to revoke the conveyance or to consume, invade or dispose of the principle for his benefit" up to the moment of his death, as specified in subsection 2203(a)(3).  It would be difficult indeed to find that the definition of "conveyance" could be broad enough to encompass the **purchase** of joint tenancies in **Kotz** and **Hart** but insufficiently broad to include a transfer of property into an investment account with a registration of beneficiary designation that clearly was intended to have testamentary **operation**. Nothing in our review of the Code compels a result so patently at odds with

the harms the General Assembly has sought to prevent with its enduring protection of the statutory spousal elective share. To read section 2203 so narrowly would require conscious indifference to "the mischief to be remedied," "the object to be attained," and the incompatibility of the consequences of such an interpretation relative to the former two concerns, 1 Pa.C.S. § 1921(c), in derogation of our obligations under our canons of construction.[11]

We agree with Wife that the orphans' court's resort to tentative or *Totten* Trusts was unnecessary in this case. The Accounts at issue satisfy subsection 2203(a)(3)'s criteria for materially the same reasons set forth in *Hart*, which are supported by the Code. Subsection 2203(a)(3) embodies Pennsylvania's long-standing policy against the disinheritance of a spouse by financial chicanery. That overarching legislative intent would be categorically undermined if investments like the Accounts enabled decedents to circumvent that public policy.

Order affirmed.

_____

[11] Further reinforcing our analysis, the General Assembly declined to define exhaustively every form of asset and revenue stream to be subject to election. Rather, the legislature described a **class** of assets subject to election that is delineated by its characteristics rather than its technical form. Furthermore, in subsection 2203(b), which was enacted at a time when financial instruments like the Accounts likely were familiar to legislators, the legislature expressly excluded certain categories of assets from spousal election, but did not include payable on death investment accounts therein.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/28/2015